# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MERIT CONSTRUCTION ALLIANCE;                    )
GRASSESCHI PLUMBING & HEATING,                  )
INC.; D'AGOSTINO ASSOCIATES, INC.;              )
and DAVID ROSS,                                 )          C.A. No. _____
      Plaintiffs,                                )
                                                )
v.                                              )
                                                )
CITY OF QUINCY,                                 )
      Defendant.                                 )

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### Introduction

This is a complaint for injunctive and declaratory relief, pursuant to M.G.L. ch. 231A; 28 U.S.C. §2201 *et. seq.*; 42 U.S.C. § 1983; and 42 U.S.C. § 1988 to have this Court: declare portions of the Quincy Responsible Employer Ordinance and Residency Requirement unlawful; enjoin the City of Quincy from enforcing the Ordinance and Residency Requirement or incorporating them into Quincy's public works bids, including the Contract Bid Documents for the New Central Middle School project (the "Project"), which are scheduled to be received, publicly opened, and read beginning at 2:00 PM on Tuesday, March 13, 2012, at the City of Quincy; and order the City of Quincy to re-bid the Project without the Responsible Employer Ordinance and Residency Requirement. The Quincy Responsible Employer Ordinance and Residency Requirement are unlawful for the following reasons:

1.      Section 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy (collectively, the "Residency Requirement"), violate the Privileges and Immunities Clause of the United States Constitution, U.S.

Const., Art. IV, §2, and also violate equal protection principles of Part 1, Article 1 (expanded by Article CVI ), due process principles of Part 1, Article X, and exceed the powers granted to Quincy under Amend. Article II (the Home Rule Article) of the Constitution of Massachusetts. Quincy's Residency Requirement is unconstitutional because it requires at least thirty-three percent (33%) of the employees working on City public works projects to be residents of Quincy, and it imposes penalties on construction contractors for violating this requirement.  The Residency Requirement unlawfully discriminates against individuals who live outside the City of Quincy and outside the Commonwealth of Massachusetts, and there is no factual or legal support to permit Quincy's discrimination.  *See* UCANE, *et al.* v. City of Fall River, United States District Court for the District of Massachusetts, Civil Action No. 10-10994-RWZ (October 4, 2011)(local residency requirement of City of Fall River unconstitutional); UCANE, *et al.* v. City of Worcester, United States District Court for the District of Massachusetts, Civil Action No. 02-11877-NG (September 16, 2003)(local residency requirement of City of Worcester unconstitutional); UCANE, *et al.*, v. City of Lowell, Mass. Norfolk County Superior Court Civil Action No. 01-00473 (December 9, 2001)(City of Lowell residency requirement unconstitutional).

    2.    Section 15.26.010(C) of the Quincy Responsible Employer Ordinance mandates that all contractors maintain and participate in an apprenticeship program for each apprentice-able trade or occupation represented in their workforce, and further requires the program to have graduated and upgraded apprentices for each apprentice-able trade within the twelve months preceding the bid date ("Apprenticeship Requirement").  This requirement is preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.,* ("ERISA"), and violates Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch.149, §§ 44A, *et seq.*, and the Home Rule Article.

3.     Section 15.26.010(E) of the Quincy Responsible Employer Ordinance requires contractors to furnish health and welfare benefits to their employees ("Health and Welfare Plan Requirement"). This provision is preempted by ERISA, and violates Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,* Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and the Home Rule Article.

4.     Section 15.26.010(H) of the Quincy Responsible Employer Ordinance requires contractors to establish and maintain a pension plan for their employees ("Pension Plan Requirement"). This mandatory Pension Plain Requirement is preempted by ERISA, and violates Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,* Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and  the Home Rule Article.

5.     Furthermore, Section 15.26.015(A) requires contractors to certify under oath and in writing on a weekly basis that they are in compliance with these provisions of the Ordinance, even though they are unconstitutional and unlawful, and Sections 15.26.015(B) – (D)  improperly subject contractors who do not comply with the Ordinance to penalties, including cessation of work on the project, withholding of payments, removal from the project, liquidated damages, and debarment from working on future projects in Quincy, in some cases permanently.

**The Parties**

1.     Merit Construction Alliance, Inc. ("MCA") is a non-profit trade association with members located throughout Massachusetts, New Hampshire, and Rhode Island who are engaged in private and public commercial construction markets. The majority of MCA's members have their principal places of business located in Eastern Massachusetts. The volume of construction work performed by MCA members each year is in the hundreds of millions of dollars. Plaintiffs, Grasseschi Plumbing & Heating, Inc. ("Grasseschi"), and D'Agostino

3

Associates, Inc. ("D'Agostino"), are members of MCA.

2.      MCA's members bid on public works projects throughout the Commonwealth of Massachusetts, including the City of Quincy.

3.      MCA's member contractors employ citizens of the United States, many of whom live outside the City of Quincy, and the Commonwealth of Massachusetts, but who are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

4.      Some of MCA's member contractors do not maintain and participate in apprenticeship programs because they do not have a need or a wish to employ apprentices, or because of the substantial associated costs, or otherwise.   Other members maintain or participate in apprenticeship programs, but have not graduated and upgraded apprentices for each apprentice-able trade or occupation represented in their workforce within the past twelve (12) calendar months.  Such members are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

5.      While MCA's member contractors do provide hospitalization, pension, annuity, and medical benefits for their employees, some members provide such employee benefits in ways that differ, in various respects, from the strict requirements of the Quincy Responsible Employer Ordinance.  Such members are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

6.      Grasseschi is a heating and plumbing construction contractor with its principal place of business in Worcester, Massachusetts.

7.      Grasseschi has successfully performed work on many projects of the size and scope of this Project, and has been prequalified by Quincy pursuant to the Commonwealth's subcontractor prequalification statute, M.G.L. ch. 149, § 44D ¾ , to bid this Project.

8.      Grasseschi employs individuals who are citizens of the United States and who live outside of the City of Quincy, and at least one long term employee who lives outside the Commonwealth of Massachusetts.

9.      David Ross is a United States citizen and a citizen and resident of the state of Connecticut.

10.     Mr. Ross is a construction worker employed for several years by Grasseschi.

11.     Mr. Ross and Grasseschi regularly perform and are qualified to perform the type of work that is involved in this Project, and that is covered by the Quincy Responsible Employer Ordinance and the Residency Requirement.

12.     Because of the negative impact on its business of the Quincy Responsible Employer Ordinance and the Residency Requirement, Mr. Ross' employer, Grasseschi, despite being prequalified to do so, has decided not to bid on the Project.

13.     As a result, Mr. Ross is being denied the opportunity to perform work on this Project.

14.     D'Agostino Associates, Inc. ("D'Agostino") is a masonry construction contractor with its principal place of business in Newton, Massachusetts.

15.     D'Agostino has successfully performed masonry work on many projects of the size and scope of this Project, and has been prequalified by Quincy pursuant to the Commonwealth's subcontractor prequalification statute, M.G.L. ch. 149, § 44D ¾ , to bid this Project.

16.     D'Agostino employs individuals who are citizens of the United States and who live outside of the City of Quincy, and several who live outside the Commonwealth of Massachusetts.

17.     D'Agostino regularly performs and is qualified to perform the type of work that is involved in this Project, and that is covered by the Quincy Responsible Employer Ordinance and the Residency Requirement.

18.     Because of the negative impact on its business of the Quincy Responsible Employer Ordinance and the Residency Requirement, D'Agostino has decided not to bid this Project, despite being prequalified to do so.

19.     The City of Quincy is a municipality within the Commonwealth of Massachusetts, organized under the laws of the Commonwealth.

## Background Facts

20.     The City of Quincy's Residency Requirement is found in § 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy.  Specifically, § 15.26.010(D) states as follows:

> In a manner that is consistent with applicable law, regulations, and Chapter 12.28 of the Quincy Municipal Code, any bidder and all subcontractors under the bidder shall employ qualified workers who are residents of the City of Quincy, in a proportion of thirty-three percent (33%) for each apprenticable trade or occupation represented in their workforce that is approved by the Division of Apprentice Training of the Department of Labor and Industries.  If a thirty-three percent (33%) qualified Quincy workforce cannot be achieved, it is incumbent upon the bidder and all subcontractors to prove, in a manner approved by the Purchasing Agent, that the bidder and all subcontractors made a genuine and best effort to achieve said resident workforce representation.

Section 12.28.010 states the following:

> On any construction project funded in whole or in part by city funds, funds from a federal grant or loan, or city-approved M.I.F.A. applications, or projects for which the city administers the construction contract, and when a project has a projected cost of more than two hundred fifty thousand dollars, residents of Quincy who are qualified to perform the work to which the employment relates shall be given preference in hiring on a one-of-every-three ratio, after the employer's foreman or supervisor and two key employees have been employed for a one-week payroll period.

A true and accurate copy of Quincy Responsible Employer Ordinance (and § 12.28.010 of the

Revised Ordinances of the City of Quincy) is attached hereto as Exhibit A.

21.     The Residency Requirement requires one third of all workers to be Quincy

residents for any construction project funded in whole or in part by city funds, or funds from the

a federal grant or loan, or city-approved M.I.F.A. applications, or projects for which the city

administers the construction contract.

22.     Upon information and belief, before enacting the Residency Requirement, the

City of Quincy did not engage in any study or other type of research to determine any factual

basis for the enactment of such a preference for city residents, nor is there any study or facts that

out-of-state and out-of-city residents employed on Quincy public construction projects are the

"peculiar source of evil" that adversely affects the employment of otherwise qualified Quincy

residents on City funded or sponsored construction projects.

23.     Section 15.26.010 (K) of the Quincy Responsible Employer Ordinance requires

that the Invitation for Bids and Request for Pre-qualification of Bidders for projects like this

Project shall clearly state the requirement that all bidders shall comply with its terms, including

15.26.010(D).

24.     The Apprenticeship Requirement of the Quincy Responsible Employer Ordinance

is found in § 15.26.010(C) of the Quincy Responsible Employer Ordinance.  That section states:

> The bidder and all subcontractors under the bidder shall maintain, participate
> and provide proof that they have successfully engaged in a bona fide
> apprentice training program as defined by G.L. chap. 23, sec. 11H and 11I for
> each apprenticable trade or occupation represented in their workforce that is
> approved by the Division of Apprentice Training and further that the bidder
> and subcontractors under the bidder shall employ apprentices at all times on
> the project in accordance with the apprentice to journeymen ratio for each
> trade prescribed therein in the performance of the contract.  Proof of
> successful engagement of a bona fide apprentice training program, as herein

referenced, shall be evidence [sic] by documentation from the Division of Apprentice Training that the bidder and all subcontractors under the bidder have within the past twelve (12) calendar months graduated and upgraded apprentices for each apprenticed trade or occupation represented in their workforce, at the time of the bid.

25.     The Health and Welfare Plan Requirement of the Quincy Responsible Employer Ordinance is found in § 15.26.010(E), which provides:

The bidder and all subcontractors under the bidder shall furnish, at their own expense, hospitalization and medical benefits at least equivalent to the hospitalization and medical benefits provided by the health and welfare plans in the applicable craft recognized by G.L. chap. 149, sec. 26 in establishing minimum wage rates for all their employees employed on the project.

26.     The Pension Plan Requirement of the Quincy Responsible Employer Ordinance is found in § 15.26.010(H), which provides:

The bidder and all subcontractors under the bidder shall provide a bona fide pension plan for all their employees employed on the project.

27.     The Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch.149, §§ 44A, *et seq.*, do not require contractors to maintain or participate in an apprenticeship program, or that they provide health and welfare benefits or a pension benefits to their employees.

28.     Section 15.26.015(A) of the Quincy Responsible Employer Ordinance requires all bidders and subcontractors to certify, under oath and in writing, on a weekly basis, that they are in compliance with the Residency Requirement, Apprenticeship Requirement, Health and Welfare Requirement, and Pension Plan Requirement, and Sections 15.26.015 (B) – (D) provide severe penalties for non-compliance.

29.     Last Fall, this Court struck down a responsible employer ordinance adopted by the City of Fall River that was very similar to the Quincy Responsible Employer Ordinance and the Residency Requirement, and two responsible employer ordinances enacted in other

municipalities in the Commonwealth, including Springfield and Worcester, finding that the

residency requirements violated the Privileges and Immunities Clause of the United States

Constitution, Article IV, § 2, cl. 1, and that the apprenticeship, health and welfare, and pension

requirements are preempted by ERISA. UCANE, et al. v. City of Fall River, United States

District Court for the District of Massachusetts, Civil Action No. 10-10994-RWZ (October 4,

2011) (the "Fall River REO Decision").

      30.    As a result of the clear mandate of the Fall River REO Decision, in recent months

the Cities of Springfield and Worcester have voluntarily suspended enforcement of most or all of

the provisions of their respective responsible employer ordinances.

      31.    In the prequalification package issued by Quincy on this Project, and

notwithstanding the Fall River REO Decision, Quincy indicated that it would enforce the Quincy

Responsible Employer Ordinance and the Residency Requirement on this Project.  At that time

MCA objected to the inclusion of the Responsible Employer Ordinance and the Residency

Requirement in the City's Request for Qualifications, based on the Fall River REO Decision.

      32.    However, when Quincy issued its Invitation to Bid and Instruction to Bidders for

this Project, and contrary to its usual practice and to the express provisions of Section 15.26.010

(K) of the Responsible Employer Ordinance, it made no mention of whether it intended to bind

bidders to the requirements of the Quincy Responsible Employer Ordinance and the Residency

Requirement on this Project.

      33.    This omission caused unnecessary and needless confusion regarding Quincy's

intentions in this regard.  Faced with a looming date for submission of filed sub-bids, MCA and

certain of its members, including D'Agostino, asked the City for clarification whether it intended

to enforce the Quincy Responsible Employer Ordinance and the Residency Requirement on this

Project. For several days, they received no response. A true and accurate copy of correspondence sent to Quincy and its representatives from MCA on March 1, 2012 is attached hereto as Exhibit B.

34.     Finally, and only after successfully enlisting the assistance of the Office of the Attorney General of the Commonwealth of Massachusetts, did Quincy on March 7, 2012 issue a clarification by way of Addendum #3, a true and accurate copy of which is attached hereto as Exhibit C.

35.     Although announcing it did not intend to enforce the health and welfare provisions of the Responsible Employer Ordinance, and part of the apprenticeship requirements, for the most part Addendum #3 provides that Quincy intends to enforce the Residency Requirement and the Apprenticeship Requirement.

36.     Addendum #3 was issued four (4) business days before the date for submission of filed sub-bids, presently scheduled for Tuesday, March 13, 2012 at 2 PM.

37.     In part because of Quincy's delay in issuing Addendum #3, Plaintiff D'Agostino has determined not to submit a bid for the masonry work on this Project, notwithstanding that it was prequalified by the City to bid that scope of work, because Quincy did not leave enough time for a responsible contractor to properly put together a bid in that short time frame.

38.     Although by way of Addendum #3 Quincy claims to have "suspended" certain portions of the Responsible Employer Ordinance with respect to the Project, other unconstitutional and unlawful portions of the Ordinance, and the Residency Requirement, remain in effect. On information and belief, Quincy still seeks to enforce all portions of its Responsible Employer Ordinance and the Residency Requirement on other construction projects, and the City may decide to revoke its purported "suspension" at any time and without warning as to this

Project.

39.     MCA members who cannot meet Quincy's Residency Requirement  are at a competitive disadvantage when bidding on public works projects in Quincy, including the Project, because these member construction companies must take into account the employment of Quincy residents not presently in their work crews in their bids.  If they were to bid on this Project, they would have to factor into their bids additional costs to cover the risks associated with hiring and training employees that have not worked for their company, and of the predictable resulting loss of productivity in the performance of the work.

40.     The City of Quincy's Residency Requirement, incorporated in its public work bids, negatively impacts the employment of MCA members' employees who are not City of Quincy residents, including those who are not citizens of the Commonwealth of Massachusetts.

41.     MCA members and their employees, therefore, have been, and continue to be, harmed by the City of Quincy's Residency Requirement and bid requirements.

42.     MCA members who do not maintain an apprenticeship program or who have not maintained the program for the last twelve months cannot meet the Apprenticeship Requirement in the Quincy Responsible Employer Ordinance.  These members are precluded from bidding on public works projects in Quincy.

43.     The City of Quincy's Apprenticeship Requirement negatively impacts the employment of employees of MCA members who do not maintain an apprenticeship program or who have not maintained an apprenticeship program for the last twelve months.

44.     MCA members and their employees, therefore, have been, and continue to be, harmed by the City of Quincy's Apprenticeship Requirement and bid requirements.

45.     MCA members who provide health and welfare benefits that differ in some

respect from the Health and Welfare Requirement in the Quincy Responsible Employer Ordinance are precluded from bidding on public works projects in Quincy.

46.     The City of Quincy's Health and Welfare Requirement, incorporated in its public work bids, including the Project, negatively impacts the employment of employees of MCA members who provide health and welfare benefits that differ in some respect from the Health and Welfare Requirement.

47.     MCA members and their employees, therefore, have been, and continue to be, harmed by the City of Quincy's Health and Welfare Requirement and bid requirements.

48.     MCA members who provide pension plans that differ in some respect from the Pension Plan Requirement in the Quincy Responsible Employer Ordinance are precluded from bidding on public works projects in Quincy.

49.     The City of Quincy's Pension Plan Requirement, incorporated in its public work bids, including the Project, negatively impacts the employment of employees of MCA members who provide pension plans that differ in some respect from the Pension Plan Requirement.

50.     MCA members and their employees, therefore, have been, and continue to be, harmed by the City of Quincy's Pension Plan Requirement and bid requirements.

51.     To comply with the Residency Requirement and bid requirements when making bids on publicly funded projects in the City of Quincy, Plaintiffs Grasseschi and D'Agostino must adjust their bids upwards for increased labor costs necessitated by hiring Quincy residents not in their employ who may not be skilled to fill positions on a Quincy construction project.

52.     The Residency Requirement and bid requirements negatively affect the rights and work opportunities of employees of Grasseschi and of D'Agostino, including Plaintiff David Ross, who does not reside in Quincy, or in Massachusetts.

53.     By adjusting their bids upwards to conform to the Residency Requirement,

Grasseschi and D'Agostino and their employees are placed at a competitive disadvantage during

the bidding process.

54.     Upon information and belief, Quincy has no facts that support the lawful

enactment and maintenance of the Residency Requirement.

55.     To comply with the Apprenticeship Requirement, Health and Welfare

Requirement and Pension Requirement of the Quincy Responsible Employer Ordinance, and bid

requirements when making bids on publicly funded projects in the City of Quincy, Plaintiffs

Grasseschi and D'Agostino must adjust their bids upwards for increased costs they incur to

comply with these provisions, which they would not otherwise incur, injuring them and their

employees by rendering them less competitive.


**Count I**
**(Declaratory Relief—Violation of Privileges and Immunities Clause)**

56.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–55

set forth above.

57.     Article IV, Section 2 to the United States Constitution states, in part, "[t]he

Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the Several

States."

58.     The Residency Requirement violates the Privileges and Immunities Clause of the

United States Constitution because it unlawfully discriminates against out-of-state individuals

and those who employ out-of-state individuals who have the requisite skill, knowledge,

experience, and education to efficiently work and complete publicly funded projects in the City

of Quincy, but for the City's Residency Requirement.  United Bldg. & Constr. Trades Council of

Camden County v. Mayor & Council of City of Camden, 465 U.S. 208 (1984).

59.     The City of Quincy cannot establish that out-of-state and out-of-city residents are the "peculiar source of evil" that the Residency Requirement is meant to address.

60.     This Court, therefore, should declare § 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy, and all resulting bid requirements that require adherence to these sections, null and void, as they are unconstitutional.

## Count II
### (Declaratory Relief—Violation of the Massachusetts Constitution)

61.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–60 set forth above.

62.     Part I, Article I (as expanded by Article CVI) of the Constitution of Massachusetts guarantees equal rights to all citizens of the Commonwealth of Massachusetts.

63.     The Residency Requirement violates Part I, Article I (as expanded by Article CVI) of the Constitution of Massachusetts by favoring Quincy residents over non-Quincy residents, whether they be citizens of the Commonwealth or another state.

64.     Part 1, Article X, of the Constitution of Massachusetts guarantees all citizens of the Commonwealth of Massachusetts due process.

65.     The Residency Requirement violates Part I, Article X of the Constitution of Massachusetts because it denies due process to non-residents of Quincy by denying them the ability to work on public works paid for in part by state and federal funds, not on the basis of skill or qualifications, but merely because they are not residents of the City of Quincy.

66.     Amend. Article II, Article 89, § 7, the Home Rule Article of the Constitution of Massachusetts, prohibits civil laws regulating the private employer-employee relationship

without statutory authority or constitutional authority.

67.     The Residency Requirement, Apprenticeship Requirement, Health and Welfare

Plan Requirement, and Pension Plan Requirement violate Section 7 of the Home Rule Article of

the Constitution of Massachusetts because they are unlawful civil laws regulating the private

employer-employee relationship, and Section 6 of the Home Rule Article because they are

inconsistent with the Commonwealth's public bidding and prevailing wage laws.  As such

Quincy did not have the requisite statutory or constitutional authority to enact these ordinances.

**Count III**
**(Declaratory Relief—ERISA Preemption, Apprenticeship Requirement)**

68.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–67

set forth above.

69.     Section 15.26.010(C) of the Quincy Responsible Employer Ordinance requires

contractors to maintain and participate in an active apprentice training program and further

requires contractors to have operated the program without suspension for the last twelve months

prior to the bid date for the project in question.

70.     Apprenticeship and training programs are employee welfare benefit plans covered

by ERISA.  Under 29 U.S.C. § 1002(1) the terms "employee welfare benefit plan" and "welfare

plan" are defined to include:

> any plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the
> extent that such plan, fund, or program was established or is maintained for
> the purpose of providing for its participants or their beneficiaries, through the
> purchase of insurance or otherwise, . . . medical, surgical, or hospital care or
> benefits, or benefits in the event of sickness, accident, disability, death or
> unemployment, or vacation benefits, apprenticeship or other training
> programs, or day care centers, scholarship funds, or prepaid legal
> services . . . .

71.     Pursuant to 29 U.S.C. § 1144(a), the ERISA statute "shall supersede any and all

State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."

72.     The Apprenticeship Requirement relates to an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).  Accordingly, the Apprenticeship Requirement is preempted by ERISA pursuant to 29 U.S.C. § 1144(a).

### Count IV
### (Declaratory Relief—ERISA Preemption, Health and Welfare Plan Requirement)

73.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–72 set forth above.

74.     Section 15.26.010(E) of the Quincy Responsible Employer Ordinance requires contractors to furnish, at their own expense, hospitalization and medical benefits at least equivalent to the hospitalization and medical benefits provided by the health and welfare plans in the applicable craft recognized by M.G.L. ch. 149, § 26.

75.     The hospitalization and medical benefits compelled by § 15.26.010(E) are employee welfare benefit plans covered by ERISA.  Under 29 U.S.C. § 1002(1) the terms "employee welfare benefit plan" and "welfare plan" are defined to include:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

76.     Pursuant to 29 U.S.C. § 1144(a), the ERISA statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."

77.     The Health and Welfare Plan Requirement relates to an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).  Accordingly, the Health and Welfare Plan

Requirement is preempted by ERISA pursuant to 29 U.S.C. § 1144(a).

## Count V
### (Declaratory Relief—ERISA Preemption, Pension Plan Requirement)

78.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–77 set forth above.

79.     Section 15.26.010(H) of the Quincy Responsible Employer Ordinance requires contractors to provide a bona fide pension plan for all their employees employed on the project.

80.     The pension plan compelled by § 15.26.010(H) is an employee welfare benefit plan covered by ERISA.  Under § 29 U.S.C. § 1002(1), the terms "employee welfare benefit plan" and "welfare plan" are defined to include:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

81.     Pursuant to 29 U.S.C. § 1144(a), the ERISA statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."

82.     The Pension Plan Requirement relates to an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).  Accordingly, the Pension Plan Requirement is preempted by ERISA pursuant to 29 U.S.C. § 1144(a).

## Count VI
### (Declaratory Relief—Violation of Massachusetts public bidding laws)

83.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–82 set forth above.

84.     As stated above, § 15.26.010(C) of the Quincy Responsible Employer Ordinance requires contractors to maintain and participate in an active apprentice training programs and further requires contractors to have operated the program without suspension for the last twelve months prior to the bid date for the project in question.

85.     Massachusetts public bidding laws, M.G.L. ch. 149, §§ 39M, 44, *et seq.*, do not require contractors to maintain or participate in an apprenticeship program.  By contrast, apprenticeship programs are entirely optional, at the election of the contractor.

86.     By requiring contractors to maintain and participate in an apprenticeship program, the Apprenticeship Requirement violates Massachusetts public bidding laws.

87.     As stated above, Section 15.26.010(E) of the Quincy Responsible Employer Ordinance requires contractors to furnish, at their own expense, hospitalization and medical benefits at least equivalent to the hospitalization and medical benefits provided by the health and welfare plans in the applicable craft recognized by M.G.L. ch. 149, § 26.

88.     Massachusetts public bidding laws, M.G.L. ch. 149, §§ 39M, 44, *et seq.*, do not require contractors to provide such health and welfare benefits.

89.     By requiring contractors to provide such health and welfare benefits, the Health and Welfare Plan Requirement of the Quincy Responsible Employer Ordinance violates the Massachusetts public bidding laws.

90.     As stated above, Section 15.26.010(H) of the Quincy Responsible Employer Ordinance requires contractors to provide a bona fide pension plan for all their employees employed on the project.

91.     Massachusetts public bidding laws, M.G.L. ch. 149, §§ 39M, 44, *et seq.*, do not require contractors to provide such pension benefits.

92.   By requiring contractors to provide such pension benefits, the Quincy

Responsible Employer Ordinance violates the Massachusetts public bidding laws.

## Count VII
### (Declaratory Relief—Violation of Massachusetts Prevailing Wage Laws)

93.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–92

set forth above.

94.   The Health and Welfare Plan Requirement of the Quincy Responsible Employer

Ordinance, found in § 15.26.010(E), prohibits contractors from paying employees wages in lieu

of health insurance.

95.   Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26-27H, expressly permit

contractors to make payments to employees in lieu of providing fringe benefits.

96.   The Health and Welfare Plan Requirement directly contravenes Massachusetts

law by preventing contractors from making payments in lieu of providing fringe benefits.

## Count VIII
### (Violation of 42 U.S.C. § 1983 and 42. U.S.C. § 1988)

97.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–96

set forth above.

98.   Section 1983 of Title 42 of the United States Code states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory . . . subjects, or causes to be subjected, any
> citizen of the United States . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, in equity, or other proper proceeding for redress.

99.   The Residency Requirement found in § 15.26.010(D) of Quincy's Responsible

Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy deprives

Plaintiffs the rights, privileges, and immunities secured by the Privileges and Immunities Clause

of the U.S. Constitution, Art. IV, § 2.

100.     The Residency Requirement found in § 15.26.010(D) of Quincy's Responsible

Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy violate 42

U.S.C. § 1983.

## Prayers for Relief

WHEREFORE, Plaintiffs request that this Court:

1.     Declare that the Residency Requirement and any related bid requirement, are

unconstitutional as a violation of the Privileges and Immunities Clause of the United States

Constitution and/or as a violation of the Constitution of Massachusetts;

2.     Declare that the Apprenticeship Requirement is preempted by ERISA, violates the

Home Rule Article, and violates Massachusetts public bidding laws;

3.     Declare that the Health and Welfare Plan Requirement is preempted by ERISA,

violates the Home Rule Article, and violates Massachusetts public bidding and prevailing wage

laws;

4.     Declare that the Pension Plan Requirement is preempted by ERISA, violates the

Home Rule Article, and violates Massachusetts public bidding laws;

5.     Declare that Residency Requirement, the Apprenticeship Requirement, the Health

and Welfare Plan Requirement, the Pension Plan Requirement, and any bid requirement

incorporating the same, be declared null and void, effective immediately;

6.     Temporarily restrain, and preliminary and permanently enjoin the City of Quincy

from enforcing the Residency Requirement, the Apprenticeship Requirement, the Health and

Welfare Plan Requirement, or Pension Plan Requirement on any project, including this Project as

to which filed sub-bids are currently scheduled for submission to Quincy on March 13, 2012 at 2

PM, and from incorporating them into any of Quincy's requests for qualifications or requests for bids on any future public projects;

7.      Order the City of Quincy to re-bid the Project without the Residency Requirement, the Apprenticeship Requirement, the Health and Welfare Plan Requirement, the Pension Plan Requirement, and any bid requirement incorporating the same;

8.      Award Plaintiffs their reasonable attorneys fees, expert fees, and costs; and

9.      Grant the Plaintiffs any and all other legal and equitable relief that this Court deems appropriate and just.

> Respectfully Submitted,
>
> MERIT CONSTRUCTION ALLIANCE;
> GRASSESCHI PLUMBING & HEATING,
> INC.; D'AGOSTINO ASSOCIATES, INC.; and
> DAVID ROSS,
>
> By Their Attorneys,
>
> Christopher C. Whitney (BBO #547104)
> cwhitney@lmkbw.com
> Scott K. Pomeroy (BBO #665110)
> spomeroy@lmbkw.com
> Little Medeiros Kinder Bulman & Whitney,
> P.C.
> 72 Pine Street
> Providence, RI  02903
> (401)272-8080
> (401)272-8195 fax

Dated: March 12, 2012

**VERIFICATION—MCA**

I, Ronald Cogliano, state that I am an officer of Merit Construction Alliance, that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this 12th day of March, 2012.

_____
Ronald Cogliano

**VERIFICATION—GRASSESCHI**

I, James Grasseschi, state that I am an officer of Grasseschi Plumbing & Heating, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
James Grasseschi

**VERIFICATION—D'AGOSTINO**

I, Romeo D'Agostino, state that I am an officer of D'Agostino Associates, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
Romeo D'Agostino

**VERIFICATION—DAVID ROSS**

I, David Ross, state that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
David Ross

### VERIFICATION—MCA

I, Ronald Cogliano, state that I am an officer of Merit Construction Alliance, that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
Ronald Cogliano

### VERIFICATION—GRASSESCHI

I, James Grasseschi, state that I am an officer of Grasseschi Plumbing & Heating, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _12_ day of March, 2012.

_____
James Grasseschi

### VERIFICATION—D'AGOSTINO

I, Romeo D'Agostino, state that I am an officer of D'Agostino Associates, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
Romeo D'Agostino

### VERIFICATION—DAVID ROSS

I, David Ross, state that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _12_ day of March, 2012.

_____
David Ross

22

### VERIFICATION—MCA

I, Ronald Cogliano, state that I am an officer of Merit Construction Alliance, that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
Ronald Cogliano

### VERIFICATION—GRASSESCHI

I, James Grasseschi, state that I am an officer of Grasseschi Plumbing & Heating, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
James Grasseschi

### VERIFICATION—D'AGOSTINO

I, Romeo D'Agostino, state that I am an officer of D'Agostino Associates, Inc., that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this 12 day of March, 2012.

_____
Romeo D'Agostino

### VERIFICATION—DAVID ROSS

I, David Ross, state that I have read the preceding allegations of this Verified Complaint, and that I find them to be true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to under the penalties of perjury this _____ day of March, 2012.

_____
David Ross

22