**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MERIT CONSTRUCTION ALLIANCE; | ) | |
| GRASSESCHI PLUMBING & HEATING, | ) | |
| INC.; D'AGOSTINO ASSOCIATES, INC.; | ) | |
| and DAVID ROSS, | ) | C.A. No. 1:12-cv-10458 |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF QUINCY, | ) | |
|     Defendant. | ) | |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Plaintiffs Merit Construction Alliance ("MCA"), Grasseschi Plumbing & Heating, Inc.

("Grasseschi"), D'Agostino Associates, Inc. ("D'Agostino"), and David Ross move, pursuant to Rule

of Civil Procedure 65 for a temporary restraining order and preliminary injunction to enjoin

Defendant City of Quincy from:

a)     enforcing the Quincy Responsible Employer Ordinance and Residency

Requirement;

b)     incorporating them into Quincy's public works projects, including the Contract

Bid Documents for the New Central Middle School project (the "Project"), the bids for which

are scheduled to be received, publicly opened, and read beginning at 2:00 PM on Tuesday,

March 13, 2012; or

c)     using the subcontractor bids to be received on Tuesday, March 13, 2012, in any

manner in furtherance of bidding the Project, including, without limitation, publishing the

accepted sub-bids to any general contractors for use in the preparation of their bids on the

Project.

As more fully set forth in the Plaintiffs' Verified Complaint and the Plaintiffs' memorandum of law, the Quincy Responsible Employer Ordinance and Residency Requirement are unlawful for the following reasons:

1.      Section 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy (collectively, the "Residency Requirement"), violate the Privileges and Immunities Clause of the United States Constitution, U.S. Const., Art. IV, §2, and also violate equal protection principles of Part 1, Article 1 (expanded by Article CVI ), due process principles of Part 1, Article X, and exceed the powers granted to Quincy under Amend. Article II (the Home Rule Article) of the Constitution of Massachusetts. Quincy's Residency Requirement is unconstitutional because it requires at least thirty-three percent (33%) of the employees working on City public works projects to be residents of Quincy, and it imposes penalties on construction contractors for violating this requirement.  The Residency Requirement unlawfully discriminates against individuals who live outside the City of Quincy and outside the Commonwealth of Massachusetts, and there is no factual or legal support to permit Quincy's discrimination.  *See* UCANE, *et al.* v. City of Fall River, United States District Court for the District of Massachusetts, Civil Action No. 10-10994-RWZ (October 4, 2011)(local residency requirement of City of Fall River unconstitutional); UCANE, *et al.* v. City of Worcester, United States District Court for the District of Massachusetts, Civil Action No. 02-11877-NG (September 16, 2003)(local residency requirement of City of Worcester unconstitutional); UCANE, *et al.*, v. City of Lowell, Mass. Norfolk County Superior Court Civil Action No. 01-00473 (December 9, 2001)(City of Lowell residency requirement unconstitutional).

2.      Section 15.26.010(C) of the Quincy Responsible Employer Ordinance mandates that all contractors maintain and participate in an apprenticeship program for each apprentice-able

trade or occupation represented in their workforce, and further requires the program to have graduated

and upgraded apprentices for each apprentice-able trade within the twelve months preceding the bid

date ("Apprenticeship Requirement"). This requirement is preempted by the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.,* ("ERISA"), and violates

Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch.149, §§ 44A, *et seq.*,

Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and the Home Rule Article.

3.       Section 15.26.010(E) of the Quincy Responsible Employer Ordinance requires

contractors to furnish health and welfare benefits to their employees ("Health and Welfare

Plan Requirement"). This provision is preempted by ERISA, and violates Massachusetts public

bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,* Massachusetts prevailing wage

laws, M.G.L. ch. 149, § 26, *et seq.,* and the Home Rule Article.

4.       Section 15.26.010(H) of the Quincy Responsible Employer Ordinance requires

contractors to establish and maintain a pension plan for their employees ("Pension Plan

Requirement"). This mandatory Pension Plain Requirement is preempted by ERISA, and violates

Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,*

Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and  the Home Rule Article.

5.       Furthermore, Section 15.26.015(A) requires contractors to certify under oath and

in writing on a weekly basis that they are in compliance with these provisions of the Ordinance,

even though they are unconstitutional and unlawful, and Sections 15.26.015(B) – (D)  improperly

subject contractors who do not comply with the Ordinance to penalties, including cessation of

work on the project, withholding of payments, removal from the project, liquidated damages, and

debarment from working on future projects in Quincy, in some cases permanently.

If the Court does not issue a temporary restraining order and a preliminary injunction, Plaintiffs will suffer irreparable harm, in that:

1.      Plaintiffs will suffer a denial of their constitutional rights; and

2.      Plaintiffs have no adequate remedy at law.

This request for a temporary restraining order and a preliminary injunction is the only means of securing effective relief to remove unconstitutional and unlawful provisions in the City of Quincy Responsible Employers Ordinance and Residency Requirement.  Here, the injunctive relief sought would also serve the public interest, as it would require the City of Quincy to cease imposing unconstitutional and unlawful requirements on bidders for public works projects in the City.

WHEREFORE, Plaintiffs request that this Court:

1.      Temporarily restrain and preliminary enjoin the City of Quincy from enforcing the Quincy Responsible Employer Ordinance and Residency Requirement;

2.      Temporarily restrain and preliminary enjoin the City of Quincy from incorporating its Responsible Employer Ordinance and Residency Requirement into Quincy's public works projects, including the Contract Bid Documents for the New Central Middle School project (the "Project"), the bids for which are scheduled to be received, publicly opened, and read beginning at 2:00 PM on Tuesday, March 13, 2012; and

3.      Temporarily restrain and preliminary enjoin the City of Quincy from using the subcontractor bids to be received on Tuesday, March 13, 2012, in any manner in furtherance

of bidding the Project, including, without limitation, publishing the accepted sub-bids to any general contractors for use in the preparation of their bids on the Project.

Respectfully Submitted,

MERIT CONSTRUCTION ALLIANCE; GRASSESCHI PLUMBING & HEATING, INC.; D'AGOSTINO ASSOCIATES, INC.; and DAVID ROSS,

By Their Attorneys,

/s/ Scott K. Pomeroy
Christopher C. Whitney (BBO #547104)
cwhitney@lmkbw.com
Scott K. Pomeroy (BBO #665110)
spomeroy@lmbkw.com
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, RI  02903
(401)272-8080
(401)272-8195 fax

Dated: March 13, 2012

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MERIT CONSTRUCTION ALLIANCE; GRASSESCHI PLUMBING & HEATING, INC.; D'AGOSTINO ASSOCIATES, INC.; and DAVID ROSS, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | C.A. No. 1:12-cv-10458 |
| CITY OF QUINCY, Defendant. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### Introduction

Plaintiffs Merit Construction Alliance ("MCA"), Grasseschi Plumbing & Heating, Inc.

("Grasseschi"), D'Agostino Associates, Inc. ("D'Agostino"), and David Ross move, pursuant to Rule

of Civil Procedure 65 for a temporary restraining order and/or preliminary injunction to enjoin

Defendant City of Quincy from:

a) enforcing the Quincy Responsible Employer Ordinance and Residency

Requirement;

b) incorporating them into Quincy's public works projects, including the Contract

Bid Documents for the New Central Middle School project (the "Project"), the bids for which

are scheduled to be received, publicly opened, and read beginning at 2:00 PM on Tuesday,

March 13, 2012; or

c) using the subcontractor bids to be received on Tuesday, March 13, 2012, in any

manner in furtherance of bidding the Project, including, without limitation, publishing the

accepted sub-bids to any general contractors for use in the preparation of their bids on the

Project.

The Quincy Responsible Employer Ordinance and Residency Requirement are unlawful for the following reasons:

1.     Section 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy (collectively, the "Residency Requirement"), violate the Privileges and Immunities Clause of the United States Constitution, U.S. Const., Art. IV, §2, and also violate equal protection principles of Part 1, Article 1 (expanded by Article CVI ), due process principles of Part 1, Article X, and exceed the powers granted to Quincy under Amend. Article II (the Home Rule Article) of the Constitution of Massachusetts. Quincy's Residency Requirement is unconstitutional because it requires at least thirty-three percent (33%) of the employees working on City public works projects to be residents of Quincy, and it imposes penalties on construction contractors for violating this requirement.  The Residency Requirement unlawfully discriminates against individuals who live outside the City of Quincy and outside the Commonwealth of Massachusetts, and there is no factual or legal support to permit Quincy's discrimination.  *See* UCANE, *et al.* v. City of Fall River, United States District Court for the District of Massachusetts, Civil Action No. 10-10994-RWZ (October 4, 2011)(local residency requirement of City of Fall River unconstitutional); UCANE, *et al.* v. City of Worcester, United States District Court for the District of Massachusetts, Civil Action No. 02-11877-NG (September 16, 2003)(local residency requirement of City of Worcester unconstitutional); UCANE, *et al.*, v. City of Lowell, Mass. Norfolk County Superior Court Civil Action No. 01-00473 (December 9, 2001)(City of Lowell residency requirement unconstitutional).

2.     Section 15.26.010(C) of the Quincy Responsible Employer Ordinance mandates that all contractors maintain and participate in an apprenticeship program for each apprentice-able

2

trade or occupation represented in their workforce, and further requires the program to have graduated

and upgraded apprentices for each apprentice-able trade within the twelve months preceding the bid

date ("Apprenticeship Requirement").  This requirement is preempted by the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.,* ("ERISA"), and violates

Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch.149, §§ 44A, *et seq*.,

Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and the Home Rule Article.

3.      Section 15.26.010(E) of the Quincy Responsible Employer Ordinance requires

contractors to furnish health and welfare benefits to their employees ("Health and Welfare

Plan Requirement").  This provision is preempted by ERISA, and violates Massachusetts public

bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,* Massachusetts prevailing wage

laws, M.G.L. ch. 149, § 26, *et seq.,* and the Home Rule Article.

4.      Section 15.26.010(H) of the Quincy Responsible Employer Ordinance requires

contractors to establish and maintain a pension plan for their employees ("Pension Plan

Requirement").  This mandatory Pension Plain Requirement is preempted by ERISA, and violates

Massachusetts public bidding laws, M.G.L. ch. 30, §39M, and ch. 149, §§ 44A, *et. seq.,*

Massachusetts prevailing wage laws, M.G.L. ch. 149, § 26, *et seq.,* and  the Home Rule Article.

5.      Furthermore, Section 15.26.015(A) requires contractors to certify under oath and

in writing on a weekly basis that they are in compliance with these provisions of the Ordinance,

even though they are unconstitutional and unlawful, and Sections 15.26.015(B) – (D)  improperly

subject contractors who do not comply with the Ordinance to penalties, including cessation of

work on the project, withholding of payments, removal from the project, liquidated damages, and

debarment from working on future projects in Quincy, in some cases permanently.

**Factual Background**

*The Plaintiff Parties*

Merit Construction Alliance, Inc. ("MCA") is a non-profit trade association with members located throughout Massachusetts, New Hampshire, and Rhode Island who are engaged in private and public commercial construction markets.  The majority of MCA's members have their principal places of business located in Eastern Massachusetts.  The volume of construction work performed by MCA members each year is in the hundreds of millions of dollars.  Plaintiffs, Grasseschi Plumbing & Heating, Inc. ("Grasseschi"), and D'Agostino Associates, Inc. ("D'Agostino"), are members of MCA.

MCA's members bid on public works projects throughout the Commonwealth of Massachusetts, including the City of Quincy.

MCA's member contractors employ citizens of the United States, many of whom live outside the City of Quincy, and the Commonwealth of Massachusetts, but who are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

Some of MCA's member contractors do not maintain and participate in apprenticeship programs because they do not have a need or a wish to employ apprentices, or because of the substantial associated costs, or otherwise.   Other members maintain or participate in apprenticeship programs, but have not graduated and upgraded apprentices for each apprentice-able trade or occupation represented in their workforce within the past twelve (12) calendar months.  Such members are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

While MCA's member contractors do provide hospitalization, pension, annuity, and medical benefits for their employees, some members provide such employee benefits in ways

4

that differ, in various respects, from the strict requirements of the Quincy Responsible Employer Ordinance. Such members are otherwise qualified to perform construction work in the City of Quincy and in the Commonwealth.

Grasseschi is a heating and plumbing construction contractor with its principal place of business in Worcester, Massachusetts. Grasseschi has successfully performed work on many projects of the size and scope of this Project, and has been prequalified by Quincy pursuant to the Commonwealth's subcontractor prequalification statute, M.G.L. ch. 149, § 44D ¾ , to bid this Project. Grasseschi employs individuals who are citizens of the United States and who live outside of the City of Quincy, and at least one long term employee who lives outside the Commonwealth of Massachusetts.

David Ross is a United States citizen and a citizen and resident of the state of Connecticut. Mr. Ross is a construction worker employed for several years by Grasseschi.

Mr. Ross and Grasseschi regularly perform and are qualified to perform the type of work that is involved in this Project, and that is covered by the Quincy Responsible Employer Ordinance and the Residency Requirement. Because of the negative impact on its business of the Quincy Responsible Employer Ordinance and the Residency Requirement, Mr. Ross' employer, Grasseschi, despite being prequalified to do so, has decided not to bid on the Project. As a result, Mr. Ross is being denied the opportunity to perform work on this Project.

D'Agostino Associates, Inc. ("D'Agostino") is a masonry construction contractor with its principal place of business in Newton, Massachusetts. D'Agostino has successfully performed masonry work on many projects of the size and scope of this Project, and has been prequalified by Quincy pursuant to the Commonwealth's subcontractor prequalification statute, M.G.L. ch. 149, § 44D ¾ , to bid this Project. D'Agostino employs individuals who are citizens of the

United States and who live outside of the City of Quincy, and several who live outside the Commonwealth of Massachusetts.

D'Agostino regularly performs and is qualified to perform the type of work that is involved in this Project, and that is covered by the Quincy Responsible Employer Ordinance and the Residency Requirement.  Because of the negative impact on its business of the Quincy Responsible Employer Ordinance and the Residency Requirement, D'Agostino has decided not to bid this Project, despite being prequalified to do so.  As a result, D'Agostino's employees are being denied the opportunity to perform work on this Project.

*The Residency Requirement*

The City of Quincy's Residency Requirement is found in § 15.26.010(D) of Quincy's Responsible Employer Ordinance and § 12.28.010 of the Revised Ordinances of the City of Quincy.  Specifically, § 15.26.010(D) states as follows:

> In a manner that is consistent with applicable law, regulations, and Chapter 12.28 of the Quincy Municipal Code, any bidder and all subcontractors under the bidder shall employ qualified workers who are residents of the City of Quincy, in a proportion of thirty-three percent (33%) for each apprenticable trade or occupation represented in their workforce that is approved by the Division of Apprentice Training of the Department of Labor and Industries.  If a thirty-three percent (33%) qualified Quincy workforce cannot be achieved, it is incumbent upon the bidder and all subcontractors to prove, in a manner approved by the Purchasing Agent, that the bidder and all subcontractors made a genuine and best effort to achieve said resident workforce representation.

Section 12.28.010 states the following:

> On any construction project funded in whole or in part by city funds, funds from a federal grant or loan, or city-approved M.I.F.A. applications, or projects for which the city administers the construction contract, and when a project has a projected cost of more than two hundred fifty thousand dollars, residents of Quincy who are qualified to perform the work to which the employment relates shall be given preference in hiring on a one-of-every-three ratio, after the employer's foreman or supervisor and two key employees have been employed for a one-week payroll period.

6

A true and accurate copy of Quincy Responsible Employer Ordinance (and § 12.28.010 of the Revised Ordinances of the City of Quincy) is attached as <u>Exhibit A</u> to the Plaintiffs' <u>Verified Complaint</u>.

The Residency Requirement requires one third of all workers to be Quincy residents for any construction project funded in whole or in part by city funds, or funds from the a federal grant or loan, or city-approved M.I.F.A. applications, or projects for which the city administers the construction contract.

Before enacting the Residency Requirement, the City of Quincy did not engage in any study or other type of research to determine any factual basis for the enactment of such a preference for city residents, nor is there any study or facts that out-of-state and out-of-city residents employed on Quincy public construction projects are the "peculiar source of evil" that adversely affects the employment of otherwise qualified Quincy residents on City funded or sponsored construction projects.

*The Apprenticeship Requirement, The Health and Welfare Plan*
*Requirement, and The Pension Plan Requirement*

The Apprenticeship Requirement of the Quincy Responsible Employer Ordinance is found in § 15.26.010(C) of the Quincy Responsible Employer Ordinance. That section states:

> The bidder and all subcontractors under the bidder shall maintain, participate and provide proof that they have successfully engaged in a bona fide apprentice training program as defined by G.L. chap. 23, sec. 11H and 11I for each apprenticable trade or occupation represented in their workforce that is approved by the Division of Apprentice Training and further that the bidder and subcontractors under the bidder shall employ apprentices at all times on the project in accordance with the apprentice to journeymen ratio for each trade prescribed therein in the performance of the contract. Proof of successful engagement of a bona fide apprentice training program, as herein referenced, shall be evidence [sic] by documentation from the Division of Apprentice Training that the bidder and all subcontractors under the bidder have within the past twelve (12) calendar months graduated and upgraded

apprentices for each apprenticable trade or occupation represented in their workforce, at the time of the bid.

*See* Verified Complaint at Exhibit A.

The Health and Welfare Plan Requirement of the Quincy Responsible Employer Ordinance is found in § 15.26.010(E), which provides:

The bidder and all subcontractors under the bidder shall furnish, at their own expense, hospitalization and medical benefits at least equivalent to the hospitalization and medical benefits provided by the health and welfare plans in the applicable craft recognized by G.L. chap. 149, sec. 26 in establishing minimum wage rates for all their employees employed on the project.

*See* Verified Complaint at Exhibit A.

The Pension Plan Requirement of the Quincy Responsible Employer Ordinance is found in § 15.26.010(H), which provides:

The bidder and all subcontractors under the bidder shall provide a bona fide pension plan for all their employees employed on the project.

*See* Verified Complaint at Exhibit A.

*The Penalties for Non-Compliance*

Section 15.26.015(A) of the Quincy Responsible Employer Ordinance requires all bidders and subcontractors to certify, under oath and in writing, on a weekly basis, that they are in compliance with the Residency Requirement, Apprenticeship Requirement, Health and Welfare Requirement, and Pension Plan Requirement, and Sections 15.26.015 (B) – (D) provide severe penalties for non-compliance, including cessation of work, withholding of payments, and liquidated damages payable to the City of Quincy.  *See* Verified Complaint at Exhibit A.

*The Project*

The Quincy Responsible Employer Ordinance and Residency Requirement are incorporated into Quincy's public works bids, including the New Central Middle School

Project.  Bids on the Project are scheduled to  be received, publicly opened, and read beginning at 2:00 PM on Tuesday, March 13, 2012.

Last Fall, this Court struck down a responsible employer ordinance adopted by the City of Fall River that was very similar to the Quincy Responsible Employer Ordinance and the Residency Requirement, and two responsible employer ordinances enacted in other municipalities in the Commonwealth, including Springfield and Worcester, finding that the residency requirements violated the Privileges and Immunities Clause of the United States Constitution, Article IV, § 2, cl. 1, and that the apprenticeship, health and welfare, and pension requirements are preempted by ERISA.  UCANE, *et al.* v. City of Fall River, United States District Court for the District of Massachusetts, Civil Action No. 10-10994-RWZ (October 4, 2011) (the "Fall River REO Decision").

As a result of the clear mandate of the Fall River REO Decision, in recent months the Cities of Springfield and Worcester have voluntarily suspended enforcement of most or all of the provisions of their respective responsible employer ordinances.

In the prequalification package issued by Quincy on this Project, and notwithstanding the Fall River REO Decision, Quincy indicated that it would enforce the Quincy Responsible Employer Ordinance and the Residency Requirement on this Project.  At that time MCA objected to the inclusion of the Responsible Employer Ordinance and the Residency Requirement in the City's Request for Qualifications, based on the Fall River REO Decision.

However, when Quincy issued its Invitation to Bid and Instruction to Bidders for this Project, and contrary to its usual practice and to the express provisions of Section 15.26.010 (K) of the Responsible Employer Ordinance, it made no mention of whether it intended to bind bidders to the requirements of the Quincy Responsible Employer Ordinance and the Residency

Requirement on this Project.  This omission caused unnecessary and needless confusion regarding Quincy's intentions in this regard.  Faced with a looming date for submission of filed sub-bids, MCA and certain of its members, including D'Agostino, asked the City for clarification whether it intended to enforce the Quincy Responsible Employer Ordinance and the Residency Requirement on this Project.  For several days, they received no response.  A true and accurate copy of correspondence sent to Quincy and its representatives from MCA on March 1, 2012 is attached to the <u>Verified Complaint</u> as <u>Exhibit B.</u>

Finally, and only after successfully enlisting the assistance of the Office of the Attorney General, did Quincy on March 7, 2012 issue a clarification by way of Addendum #3.  A true and accurate copy of Addendum #3 is attached to the <u>Verified Complaint</u> as <u>Exhibit C.</u>

Although announcing it did not intend to enforce the health and welfare provisions of the Responsible Employer Ordinance, and part of the apprenticeship requirements, for the most part Addendum #3 provides that Quincy intends to enforce the Residency Requirement and the Apprenticeship Requirement.

Addendum #3 was issued four (4) business days before the date for submission of filed sub-bids, presently scheduled for Tuesday, March 13, 2012 at 2 PM.  In part because of Quincy's delay in issuing Addendum #3, Plaintiff D'Agostino has determined not to submit a bid for the masonry work on this Project, notwithstanding that it was prequalified by the City to bid that scope of work, because Quincy did not leave enough time for a responsible contractor to properly put together a bid in that short time frame.

Although by way of Addendum #3 Quincy claims to have "suspended" certain portions of the Responsible Employer Ordinance with respect to the Project, other unconstitutional and unlawful portions of the Ordinance, and the Residency Requirement, remain in effect.  On

information and belief, Quincy still seeks to enforce all portions of its Responsible Employer

Ordinance and the Residency Requirement on other construction projects, and the City may

decide to revoke its purported "suspension" at any time and without warning as to this Project.

### Standard of Review

To be entitled to injunctive relief a party must establish that it has a likelihood of success

on the merits, that it will suffer immediate and irreparable harm if relief is not granted, that such

harm outweighs any harm to the non-moving party, and that the public interest will not be

adversely affected.  Planned Parenthood v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981); Lancor

v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir. 1985).  The balancing of interests

shifts in plaintiffs' favor when a strong likelihood of success on the merits is shown.  SEC v.

World Radio Mission, Inc., 544 F.2d 535, 541-42 (1st Cir. 1976).

### Points and Authorities

**I.      The City of Quincy's Responsible Employer Ordinance and Residency Requirement
        violate the Privileges and Immunities Clause of the United States Constitution.**

The Privileges and Immunities Clause of the United States Constitution, U.S. Const. art.

IV, § 2, provides the nation's citizens the right to compete for work in any of the several states,

regardless of their state of residence. A state or municipality that passes legislation

discriminating against out-of-state workers has the burden of demonstrating (1) a substantial

reason for the discrimination, and (2) a close relation between the discrimination and its purpose.

*See*, *e.g.*, Utility Contractors Ass'n of New England v. City of Worcester, 236 F. Supp. 2d 113,

122 (D. Mass. 2002).

The Quincy Responsible Employer Ordinance and the Residency Requirement violate the

Privileges and Immunities Clause because they discriminates against out-of-state residents.  *See*,

*e.g.*, United Bldg. & Constr. Trades Council v. Camden, 465 U.S. 208, 221–22 (1984).  In

Camden, the Court held that an out-of-state resident's interest in employment on public works contracts in another state is sufficiently fundamental to the promotion of interstate harmony so as to fall within the purview of the Privileges and Immunities Clause.

This Court and other courts in the Commonwealth have routinely enjoined similar laws on the same grounds.  Just last fall, this Court held that a substantially similar residency requirement imposed as part of a local "responsible employer ordinance" in Fall River was unconstitutional.  *See* Utility Contractors Ass'n of New England v. City of Fall River, 2011 WL 4710875 at *4–*5 (D. Mass. Oct. 4, 2011).  Prior to that, in Utility Contractors Ass'n of New England v. City of Lowell, Civil Action No. 01-00473 (Mass. Super Ct. December 19, 2001), the Norfolk County Superior Court held the City of Lowell's residency requirement, requiring 33% of man hours on public works projects be held by Lowell residents, was unconstitutional since the City of Lowell had no chance of demonstrating that nonresidents working in the construction trades were the "peculiar source of evil" for the high unemployment of city residents in such trades.  Similarly, in Utility Contractors Ass'n of New England v. City of Worcester, 236 F. Supp. 2d at 113, this Court enjoined the residency requirement of a similar ordinance, holding:

> In short, nothing the in City's summary judgment papers warrants a retreat from the position the Court took in its preliminary injunction decision.  The Privileges and Immunities clause flatly forbids enforcement of the City's [Residency Requirement Ordinance] against contractors and subcontractors on its public works.

For the Court's convenience, copies of the Fall River, Lowell, and Worcester decisions are attached to this memorandum as Exhibits A, B, and C.

The law is clear that the City of Quincy's Responsible Employer Ordinance and Residency Requirement is unconstitutional.  Accordingly, the City of Quincy should be

enjoined from enforcing this requirement.

II.     **The City of Quincy's Responsible Employer Ordinance and Residency Requirement violate the Massachusetts Constitution.**

The Responsible Employer Ordinance and Residency Requirement also violate three separate articles of the Constitution of Massachusetts.

First, the Residency Requirement violates Part I, Article I (expanded by Article CVI) of the Constitution of Massachusetts by favoring Quincy residents over non-Quincy River residents, whether they be citizens of the Commonwealth or another state.  As relevant here, Article CVI states,

> All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin.

Quincy's Residency Requirement conflicts with this provision's guarantee of equal rights to all Massachusetts citizens.

Second, Part 1, Article X, of the Constitution of Massachusetts guarantees all citizens of the Commonwealth of Massachusetts due process.  The Residency Requirement denies due process to non-residents of Quincy by denying them the ability to work on public works, not on the basis of skill or qualifications, but merely because they are not residents of Quincy.

Third, Amend. Article II, the Home Rule Article of the Constitution of Massachusetts, prohibits civil laws regulating the private employer-employee relationship without statutory authority or constitutional authority.  *See* Article 89, Section 7.  The Residency Requirement violates the Home Rule Amendment of the Constitution of Massachusetts because it purports to regulate the private employer-employee relationship without any statutory or constitutional

authority.  *See*, *e.g.*, <u>CHR General, Inc. v. City of Newton</u>, 387 Mass. 351, 439 N.E.2d 788

(1982) (holding an ordinance regulating the landlord-tenant relationship violated the Home Rule

Amendment because the ordinance improperly regulated a civil relationship, and the city failed

to seek authority from the Legislature to pass such an ordinance).

**III.    The Apprenticeship Requirement, the Health and Welfare Plan Requirement, and the Pension Plan Requirement are all preempted by ERISA.**

The Apprenticeship Requirement, § 15.26.010(C) of the Quincy Responsible Employer

Ordinance, requires contractors to maintain and participate in an active apprentice training

program and further requires contractors to have operated the program without suspension for

the last twelve months prior to the bid date for the project in question.  The Health and Welfare

Plan Requirement, § 15.26.010(E) of the Quincy Responsible Employer Ordinance, requires

contractors to furnish, at their own expense, hospitalization and medical benefits at least

equivalent to the hospitalization and medical benefits provided by the health and welfare plans in

the applicable craft recognized by M.G.L. ch. 149, § 26.  The Pension Plan Requirement, §

15.26.010(H) of the Quincy Responsible Employer Ordinance requires contractors to provide a

bona fide pension plan for all their employees employed on the project.

All three of these sections require contractors bidding on projects in Quincy to adopt

employee welfare benefit plans that are preempted by ERISA.  Under 29 U.S.C. § 1002(1) the

terms "employee welfare benefit plan" and "welfare plan" are defined to include:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

Pursuant to 29 U.S.C. § 1144(a), the ERISA statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." *Id.*  The Supreme Court has noted that the ERISA preemption clause is "conspicuous for its breadth" and "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA."  FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 407 (1990); *see also*, *e.g.*, Boise Cascade Corp. v. Peterson, 939 F.2d 632 (8th Cir. 1991)(holding a minimum jobsite ratio rule related to employee benefit plans covered by ERISA and thus was preempted by ERISA); Fort Halifax Packing Co. v. Coin, 482 U.S. 1, 16 (1987); Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849 (1st Cir 1993) (finding, "a state statute that obligates an employer to establish an employee benefits plan is itself preempted . . . ").

Here, Quincy's Apprenticeship Requirement, Health and Welfare Plan Requirement, and Pension Plan Requirement all relate to employee welfare benefit plans within the meaning of 29 U.S.C. § 1002(1).  Accordingly, all three requirements are preempted by ERISA pursuant to 29 U.S.C. § 1144(a).

**IV.    The Apprenticeship Requirement, the Health and Welfare Plan Requirement, and the Pension Plan Requirement violate Massachusetts public bidding and prevailing wage laws.**

The Massachusetts public bidding laws, Mass. Gen. Laws ch. 30, §39M, and ch. 149, §§ 44A, *et seq*., do not require contractors to maintain or participate in an apprenticeship program, provide health and welfare benefits, or provide pension benefits to their employees.  By imposing such requirements, Quincy's Responsible Employer Ordinance contravenes the public bidding laws and is therefore invalid and unlawful.

Likewise, the Commonwealth's prevailing wage laws, Mass. Gen. Laws ch. 149, §§ 26–27H, do not require contractors on public projects to participate in any apprenticeship program,

provide any particular health and welfare benefits, or provide a pension plan.  Indeed, § 26 of the

prevailing wage statute expressly authorizes contractors on public projects to make cash

payments to their employees in lieu of providing health insurance and other benefits.  That

section states:

> The aforesaid rates of wages in the schedule of wage rates shall include
> payments by employers to health and welfare plans, pension plans and
> supplementary unemployment benefit plans as provided in said section
> twenty-six, and such payment shall be considered as payments to persons
> under this section performing work as herein provided.  *Any employer*
> *engaged in the construction of such works who does not make payments to a*
> *health and welfare plan, a pension plan and a supplementary  unemployment*
> *benefit plan, where such payments are included in said rates of wages, shall*
> *pay the amount of said payments directly to each employee engaged in said*
> *construction.*

Mass. Gen. Laws ch. 149, § 26 (emphasis added).  Thus, Quincy's Responsible Employer

Ordinance is also invalid and unlawful because its requirements contravene the prevailing wage

statute.

**V.      The City of Quincy's Responsible Employer Ordinance and Residency Requirement**
**violate 42 U.S.C. § 1983.**

Section 1983 of Title 42 of the United States Code states, in part, "[e]very person who,

under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, in equity, or other proper proceeding for redress."

As discussed above, the Quincy Responsible Employer Ordinance and Residency Requirement

deprive the Plaintiffs of the rights, privileges, and immunities secured by the Privileges and

Immunities Clause of the U.S. Constitution, Art. IV, § 2.  Accordingly, the Quincy Responsible

Employer Ordinance and Residency Requirement violate 42 U.S.C. § 1983.

**VI.    Plaintiffs will suffer irreparable injury unless Quincy's Responsible Employer Ordinance and the Residency Requirement are enjoined.**

MCA's members and the other Plaintiffs have a lawful right to participate in the competitive bid process without the impediment of unconstitutional bid requirements.  Without the protection of a restraining order, the City of Quincy will continue to include these unlawful provisions in its bid specifications for public works contracts.  Because Quincy's public works contracts are awarded on a competitive bid basis, money damages for future injuries are not ascertainable.  The inclusion of the unlawful provisions in the bid specifications irreparably harms Plaintiffs and all other contractors that bid, or would like to bid, on public works in Quincy, as they will be forced to either adjust their bids upwards or, in certain cases, not submit bids at all.  *See*, *e.g.*, Quincy Ornamental Iron Works, Inc. v. Findlen, 353 Mass. 85, 90 (1967) (Plaintiff entitled to injunctive relief because of a showing that it could have been awarded bid was "a sufficient proprietary interest to justify injunctive relief"); Glenwood Bridge, Inc. v. Minneapolis, 940 F.2d 367, 371-372 (8th Cir., 1991) (Although Plaintiff could receive money damages for lost opportunity to receive bid for public works project, irreparable harm exists because of the otherwise unprotected interest in participating in a legal bidding process and the awarding of a legal bid.); Ainslie Corp. v. Middendorf, 381 F.Supp. 305 (D. Mass. 1974) (injunction granted to bid protester due to the inadequacy of monetary remedy).

Moreover, the irreparable injury to the Plaintiffs outweighs any risk of harm to the Defendant from a restraining order or injunction.  Issuing injunctive relief in this matter will simply serve to prohibit the City of Quincy from enforcing its unconstitutional and unlawful Responsible Employer Ordinance and Residency Requirement.  In addition, issuance of injunctive relief here will advance the public interest by ensuring that Quincy ceases to apply its unconstitutional and unlawful bid requirements.

**Conclusion**

For the foregoing reasons, this Court must temporarily restrain and/or preliminarily enjoin the City of Quincy from: enforcing the Quincy Responsible Employer Ordinance and Residency Requirement; incorporating them into Quincy's public works projects, including the Contract Bid Documents for the New Central Middle School project (the "Project"), the bids for which are scheduled to be received, publicly opened, and read beginning at 2:00 PM on Tuesday, March 13, 2012; or using the subcontractor bids to be received on Tuesday, March 13, 2012, in any manner in furtherance of bidding the Project, including, without limitation, publishing the accepted sub-bids to any general contractors for use in the preparation of their bids on the Project.

Respectfully Submitted,

MERIT CONSTRUCTION ALLIANCE;
GRASSESCHI PLUMBING & HEATING,
INC.; D'AGOSTINO ASSOCIATES, INC.; and
DAVID ROSS,

By Their Attorneys,

/s/ Scott K. Pomeroy
Christopher C. Whitney (BBO #547104)
cwhitney@lmkbw.com
Scott K. Pomeroy (BBO #665110)
spomeroy@lmbkw.com
Little Medeiros Kinder Bulman & Whitney,
P.C.
72 Pine Street
Providence, RI  02903
(401)272-8080
(401)272-8195 fax

Dated: March 13, 2012