# B

Case 1:12-cv-10458-RWZ   Document 3-2   Filed 03/13/12   Page 2 of 3

Utility Contractors Ass'n of New England, Inc. v. City of Lowell, Not Reported in N.E.2d...

2001 WL 34059083
Only the Westlaw citation is currently available.
Superior Court of Massachusetts.

UTILITY CONTRACTORS ASS'N
OF NEW ENGLAND, INC. et al.,
v.
CITY OF LOWELL.

No. 010473.   |   Dec. 19, 2001.

Opinion

### MEMORANDUM AND ORDER

JANET L. SANDERS, Associate Justice.

*1 This is an action challenging the validity of an ordinance enacted by the Lowell City Council in 1990, as later amended, which requires that 33 percent of the construction work hours on public works projects be completed by Lowell residents. Plaintiffs, which include construction contractors who do not have 33 percent of their employees from Lowell, claim that the city ordinance violates the Privileges and Immunities Clause of the United States Constitution. Amendment XIV § 1. Plaintiffs now move for summary judgment pursuant to Rule 56, Mass.R.Civ.Pro., contending that there are no genuine issues of material fact such that they are entitled to judgment as a matter of law.

### *Undisputed Facts*

Plaintiffs have submitted a Statement of Facts pursuant to Rule 9(a)(5); defendant has admitted to all but a few of those facts. Those facts which are concededly undisputed (or to which defendant has offered no contrary evidence) can be summarized as follows.

On July 24, 1990, the City Council for the City of Lowell (the "City") enacted an amendment to Chapter 20 of the Code of Ordinances. That amendment (the "Residency Requirement Ordinance" or the "Ordinance") required that, on any construction project receiving City funds or federal grant money administered by the City, 25 percent of the total construction employee work hours had to be completed by Lowell residents. City Council amended the Residency Requirement Ordinance in 1992 and again in 1994. Currently, the Residency Requirement Ordinance states that 33 percent of the work hours be completed by Lowell residents.

Plaintiffs are all adversely affected by the Residency Requirement Ordinance.[1] Plaintiff Utility Contractors Association of New England, Inc. ("UCANE") is a non-profit corporation representing more than 100 union and non-union contractors who are principally engaged in public works projects in the New England area. Many of its members do not have 33 percent of their employees residing in Lowell, and thus would not be able to bid on public works projects there without adjusting their work crews. Plaintiffs R.H. White Construction Company, Inc. ("R.H.White") and I.W. Harding Construction Inc. ("I.W.Harding") are contractors with work forces which do not meet the requirements of the Ordinance. I.W. Harding refuses to bid on public works projects in Lowell because it would mean terminating some employees, causing disruption and inefficiency within the company; and R.H. White increases its bids on such projects in order to account for the increased labor costs incurred as a result of hiring Lowell residents. Plaintiff Dennis Dugan is a New Hampshire resident in the construction business who, by virtue of his residency, has had his job opportunities affected by the Residency Requirement Ordinance.

[1] Although defendant denies that plaintiffs are at a competitive disadvantage as a result of the Residency Requirement Ordinance, it offers no evidence contradicting the facts set forth in support of that claim, which goes to the question of whether plaintiffs have standing.

As to what led up to the enactment of the Ordinance and the reasons behind it, plaintiffs for purposes of this Motion stipulate to the facts set forth in the Affidavit of Curtis LeMay, which is offered in opposition to the Motion. The City Council, of which LeMay was a member until 1993, was concerned in 1990 about the City's high unemployment rate (then at 10 percent), and its particular impact on construction trade workers who lived in Lowell. Local union members voiced their support for residency requirements, communicating orally to members of a City Council subcommittee set up to consider it. Union representatives (as well as other individuals identified only by name and address) also spoke in favor of the proposed ordinance at three City Council meetings in 1990 and again at meetings in 1992 and 1994, when the Ordinance was amended. The minutes of those meetings do not record what they said. It is conceded, however, that the City did not conduct any research to determine whether the unemployment rate within the City

Case 1:12-cv-10458-RWZ   Document 3-2   Filed 03/13/12   Page 3 of 3

Utility Contractors Ass'n of New England, Inc. v. City of Lowell, Not Reported in N.E.2d...

was attributable to the employment, on public works projects, of those who did not live in the City. See ¶ 3 of Plaintiffs' Statement of Facts, which defendant has admitted as true. Indeed, the defendant offers no evidence to suggest that such a causal link existed at any time, much less that such evidence was presented to or considered by the City Council.

### *Applicable Law*

**\*2** Defendant does not take issue with plaintiffs' description of the applicable law, either in its written opposition or in oral arguments on this motion on December 17, 2001. Indeed, although the development of the law in this area has been somewhat convoluted, the legal issues raised by this case have been addressed and decided by both the Supreme Judicial Court and the United States Supreme Court. Those decisions are set forth quite succinctly in plaintiff's Memorandum of Law. The upshot of those decisions is that a municipal ordinance like the instant one which seeks to limit work opportunities for non-residents can be justified only if it is demonstrated that the non-residents are the "peculiar source of the evil" that the legislation seeks to remedy. *See Massachusetts Council of Construction Employers, Inc., v. Mayor of Boston*, 384 Mass. 466 (1981); *see also United Building and Construction Trades Council of Camden County v. Mayor and Council of City of Camden*, 465 U.S. 208 (1984). Thus, if the ordinance is intended to address the high unemployment rate, as is contended in the instant case, then the burden is on the City to demonstrate that the high unemployment among residents is attributable to the employment on public works projects of those who reside outside the City.

Although the defendant agrees to plaintiffs' description of the applicable law, it argues in opposition that, applying the standards that I must under Rule 56, summary judgment would be inappropriate. Specifically, it contends that it should be given an opportunity to present at trial evidence on an issue which it concedes that it has the burden of proof: whether a valid justification for the residency preference existed in 1990 when the City Council enacted this Ordinance, and then again in 1992 and 1994 when the Ordinance was amended. It points to the LeMay Affidavit, which plaintiffs accept as true for purposes of this Motion. The question is whether that affidavit is sufficient to raise a triable issue. I conclude that it is not.

Summary judgment is appropriate where there are no genuine disputes of material fact, and, based on the summary judgment record, the moving party is entitled to judgment as a matter of law. *Community National Bank v. Dawes*, 369 Mass. 550, 553 (1976). The burden is initially on the moving party to show the absence of any triable issue. Where the party moving for summary judgment does not bear the burden of proof at trial on a particular issue, it sustains its burden by submitting affirmative evidence negating an essential element of the non-moving party's case or by showing that the non-moving party has no reasonable expectation of proving that element at trial. *Kourouvacilis v. General Motors Corporation*, 410 Mass. 706, 716 (1991). Once the moving party has sustained its burden, the opposing party must respond by setting forth facts which show that indeed a dispute on some material issue exists. Unsubstantiated assertions or a reliance on the pleadings is not enough. *LaLonde v. Eisner*, 405 Mass. 207, 209 (1989).

**\*3** Turning to the instant case (in which discovery has been completed), I conclude that defendant has no reasonable expectation of proving, at trial, that the unemployment rates in Lowell, either in 1990 or in later years, were attributable to the fact that a high number of nonresidents were employed on public works jobs, thus taking away jobs from residents. The City concedes that it did not conduct any research to determine that a residency requirement was necessary to sustain the economy of the City or that non-residents were filling construction jobs on public works projects so as to create unemployment for Lowell construction workers. At best, the City can demonstrate that the unemployment rate was at 10 percent in 1990,[2] and that certain union representatives and private individuals spoke in favor of the Ordinance in 1990 and in later years when it was amended.

> 2   The City presents no evidence as to the unemployment rate in 1992 and in 1994, when the rate presumably declined but the residency requirement was amended upwards.

Because the City has no reasonable expectation of presenting facts which would be sufficient for a court to find the Ordinance constitutional, plaintiffs' Motion for Summary Judgment is ALLOWED. Accordingly, this Court declares that the Residency Requirement Ordinance is null and void because it violates the federal Privileges and Immunities Clause. Judgment shall enter for the Plaintiffs.

End of Document                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.