UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MERIT CONSTRUCTION ALLIANCE,
   et alia
       Plaintiff

v.                                              Civil Action No. 12-10458 RWZ

CITY OF QUINCY

       Defendant

---

## AFFIDAVIT OF KATHRYN HOBIN

I, Kathryn Hobin, being first duly sworn, do hereby depose and state as follows.

1. I make each of the following statements of my own personal knowledge.

2. I am the Chief Procurement Officer of the city of Quincy. I am also a licensed attorney, in good standing, in the commonwealth of Massachusetts.

3. In my capacity as Chief Procurement Officer, I have worked on the pre-qualification and bid process concerning the construction of a new Central Middle School. While I was not on the pre-qualification committee, I received and reviewed the results of their work, and I issued letters to all of the contractors who were pre-qualified.

4. On September 22, 2011, I signed and forwarded letters to D'Agostino Associates, Inc. and Grasseschi Plumbing & Heating – both of whom were pre-qualified to work in the city. Prior to that date, and concurrent with their submittals to the pre-qualification committee, both companies signed certifications that they would

comply with the provisions of Quincy's Responsible Employer Ordinance, a copy of which had been provided to them, and all other interested bidders. Since that date, my office has never received a question from either of these companies concerning the Responsible Employer Ordinance.

5. The city of Quincy issued three addenda to the bid documents for this project, resulting from questions submitted by contractors. Had I received a question from either of these companies regarding the Responsible Employer Ordinance, my response would have been included in one of the three addenda, or would have been addressed in Addendum 3, where the only question submitted on the ordinance was answered.

6. Due to my training and experience in this work, I am familiar with the issues surrounding a so-called residency requirement in public bidding. We have such a requirement in our REO, contained in Paragraph D of Section 15.26.010.

7. The manner in which that provision is applied is as follows. If a successful bidder employs union tradesman, then they generally seek employees from the local union halls, complying with the provisions of the ordinance without complaint. The city provides no input as to whom or how they hire. If the successful bidder is not a union shop, then it has been my experience that they will generally have their own workforce that they bring to Quincy. In such an instance, I require that the company certify to me in writing that it is not hiring employees for the job, and we do not require compliance with the residency threshold. We advise the employer that if additional workers are hired, then the Quincy preference should be applied, and I am prepared to provide assistance as

to how a contractor could identify Quincy employees. The South Shore Workforce Investment Board is located in Quincy, together with the offices of the Quincy Chamber of Commerce. Both entities are readily able to provide names of potential employees, in order to facilitate hiring and minimize the burden that our ordinance might otherwise place on a contractor.

8. We understand in Quincy the difficulties of residency preference and do our best simply to ensure that any opportunity for work that can be made available to a Quincy resident, is. We understand that companies that work in our city may occasionally have a workforce consisting entirely of non-residents, and do not impede their ability to work on city projects. By way of example, D'Agostino was the successful bidder on the Quincy High School Project, and completed that five million dollar contract with a workforce consisting almost entirely of non-residents.

I sign this under the penalties of perjury this 19th day of March, 2012.

_____
Kathryn Hobin