UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10458-RWZ


MERIT CONSTRUCTION ALLIANCE, *et al.*

v.

CITY OF QUINCY


MEMORANDUM OF DECISION

April 18, 2012

ZOBEL, D.J.

## I.  Background

Plaintiffs Merit Construction Alliance, a trade association, together with Grasseschi Plumbing and Heating Inc., D'Agostino Associates, Inc., two of its members and David Ross, a construction worker, complain that certain provisions of the "Responsible Employer Ordinance" ("REO") promulgated by the City of Quincy ("Quincy"), § 15.26.010 of the Revised Ordinances of Quincy, violate the United States Constitution and that others are preempted by the Employee Retirement Income Security Act, 29 U.S.C.§ 1001, et seq. ("ERISA").  The members of the Alliance are frequent bidders on public works projects throughout the Commonwealth of Massachusetts including the City of Quincy.  They seek an order declaring the offending provisions unlawful and enjoining Quincy from enforcing them.  The matter is before me now on their motion for a preliminary injunction.

The REO was promulgated on May 17, 2010, by unanimous vote of the City Council.  It mandates, in the provisions in issue, that all contractors on public agency projects (1) utilize a workforce 33% of which are residents of Quincy (REO at ¶ (D)); (2) maintain and participate in an apprenticeship program (id. at ¶ (C)); and (3) provide health and welfare (id. at ¶ (E)) and pension (id. at ¶ (H)) benefits for their employees. Docket # 1 Ex. A at 7-8.  The immediate impetus for the lawsuit was Quincy's "New Central Middle School Project."  On March 7, 2012, a few days before the commencement of this action, Quincy issued an addendum to the Invitation to Bid on that Project announcing that "in light of recent case law ... the city intends to suspend application of ... the last sentence of Paragraph C ... Paragraph E in its entirety and Paragraph H in its entirety." Docket # 1 Ex. A at 7-8.  Plaintiffs point out that although Quincy has voluntarily suspended application of portions of the REO on the Middle School Project, that suspension, by its terms, does not carry over to other construction projects.  Therefore, defendant may not only enforce all parts of the REO in other contexts, but it may decide to revoke the suspension at any time without warning on this Project.  Plaintiffs therefore press the motion for injunctive relief.

Plaintiffs challenge the residency requirement as violative of the Privileges and Immunities and Equal Protection Clauses of the United States Constitution, and the health and welfare, pension and apprenticeship provisions as preempted by ERISA and in conflict with Massachusetts Constitution, public bidding and prevailing wage laws.

**II.  Standard**

In ruling on a motion for a preliminary injunction, the district court must consider "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir.2008) (quotation marks and citations omitted).

## III.  Analysis

On October 4, 2011, this court enjoined an REO of the City of Fall River with very similar residency, apprenticeship, health and welfare, and pension provisions. Utility Contractors Association of New England, Inc., et al. v. City of Fall River, No 10-10994-RWZ, 2011 WL 4710875, *9 (D. Mass. Oct. 4, 2011).  Quincy seeks to avoid the holding of Fall River on four principal grounds.  First, it argues that it has a "substantial reason" justifying its discrimination against non-residents, an argument that was not presented by the City in Fall River.  Second, because the REO contains a "genuine and best effort[s]" hardship provision and only applies to city funded projects, it is "a lawful exercise of [Quincy's] police power, narrowly tailored to address its activity in the public works marketplace." Docket # 5 at 9.  Third, it urges the court to revisit its Fall River ruling and hold that an REO specifically mandating an apprenticeship program does not "relate to" an apprenticeship program[1] under ERISA, and fourth, even if a mandatory apprenticeship program is an employee benefit program subject to ERISA

---

[1]  "Apprenticeship programs" are specifically defined as employee benefit plans under ERISA. 29 U.S.C. § 1002(1).

preemption, here preemption is not appropriate because Quincy is acting as a "market

participant."

The third and fourth arguments were squarely addressed in <u>Fall River</u>. Because

Quincy's REO apprenticeship provision is not materially different from Fall River's,

these arguments need not be revisited, and I decline defendant's invitation to do so. <u>Id.</u>

at *4-5, *7.  Further, Quincy acknowledges the similarity of its health and welfare and

pension provisions to those in the Fall River ordinance and does not seriously argue for

their survival.  Therefore, only the residency requirement is truly at issue.

REO § 15.26.010 (D) provides:

> In a manner that is consistent with applicable law, regulations, and
> Chapter 12.28 of the Quincy Municipal Code, any bidder and all
> subcontractors under the bidder shall employ qualified workers who are
> residents of the City of Quincy, in a proportion of thirty-three (33%) for
> each apprenticeable trade or occupation represented in their workforce
> that is approved by the Division of Apprentice Training of the Department
> of Labor and Industries. If a thirty-three percent (33%) qualified Quincy
> workforce cannot be achieved, it is incumbent upon the bidder and all
> subcontractors to prove in a manner approved by the Purchasing Agent,
> that the bidder and all subcontractors made a genuine and best effort to
> achieve said resident workforce representation.

To establish a violation of the Privileges and Immunities Clause, plaintiffs must

show that the discriminatory act impairs one of the protected privileges.  Then, the

burden shifts to the governmental entity to establish that it had a substantial reason for

the difference in treatment and that the discrimination bears a substantial relationship

to those objectives. <u>Toomer v. Witsell</u>, 334 U.S. 385, 396 (1948); <u>Supreme Court of</u>

<u>Virginia v. Friedman</u>, 487 U.S. 59, 64–65 (1988).

Quincy's "substantial reason" for discriminating against non-residents is its desire to ensure that "its taxpayers who are embarking over the next decade on a multi-million dollar investment in their community [ ] see some return on their substantial, and unique investment in the way of jobs" because it committed "$1.6 Billion dollars in public works contracts in its downtown" and other public works projects. Docket # 5 at 7-8.

Quincy notes that prior to revising the REO the mayor of Quincy, Thomas P. Koch, was "hearing from the citizenry on an almost daily basis that the blue collar sector of the city needs work," and that it is "axiomatic that every municipality would wish to see its citizens employed, and would do whatever it could to insure that to happen." Id.   The Mayor's statements and defendant's assertions certainly explain Quincy's desire that a certain percentage of jobs on its public works projects go to its own residents.  However, "the effect of the Privileges and Immunities Clause cannot be avoided 'solely under the guise of avoiding economic losses to residents.'" Silver v. Garcia, 592 F. Supp. 495, 499 (D.P.R. 1984) aff'd, 760 F.2d 33 (1st Cir. 1985) (citing Hicklin v. Orbeck, 437 U.S. 518, 518 (1978)).  See also Util. Contractors Ass'n of New England, Inc. v. City of Worcester, 236 F. Supp. 2d 113, 120 (D. Mass. 2002).

Quincy provides no evidence that the city engaged in any extensive fact finding, conducted or commissioned any studies, or made any determination based on evidence that non-residents were a particular source of the unemployment of Quincy's blue-collar workers.  To the contrary, one may reasonably infer that non-residents shop, ride public transportation, frequent restaurants and taverns, and in many other

5

ways contribute substantially to the Quincy economy, and that Quincy residents are gainfully employed well outside the confines of Quincy.  The purpose of the Privileges and Immunities Clause is "to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy," Toomer, 334 U.S. at 395.[2]

Defendant's reliance on White v. Mass Council of Construction Employers, 460 U.S. 204 (1983), is misplaced. In White the Supreme Court upheld a mandatory 50% residency requirement for city-funded construction projects where the city "was not regulating the marketplace, but was spending city funds." Docket # 5 at 9.  However, White was a challenge under the commerce clause, not, as here, the Privileges and Immunities Clause.  White explicitly did not address potential invalidation of the ordinance under the latter because that issue had not been "briefed or argued." Id. at 1048, n. 12.  In any event, there is no "market participant" exception to the Privileges and Immunities Clause.

Finally, defendant argues that the "best efforts" provision which allows for the possibility of relief if the contractor does not reach the 33% threshold saves the entire provision.  However, the mere fact that Quincy chose to include a clause that could potentially save a bidder from being subject to an unconstitutional residency mandate does not render that mandate constitutional, as the applicability of the Privilege and Immunities Clause does not depend on the level of hardship imposed on municipal residents.

---

[2] Municipal residents are entitled to the same protection. United Bldg. & Const. Trades Council of Camden County & Vicinity v. Mayor & Council of City of Camden, 465 U.S. 208, 215 (1984).

Therefore, Quincy does not provide a constitutionally adequate justification for treating residents and non-residents differently in connection with the construction of its public works projects.

**IV. Conclusion**

Fall River is directly applicable to the Quincy REO, and plaintiffs are therefore likely to succeed on the merits.  Plaintiffs' and the public's interest will be irreparably harmed by the enforcement of Paragraphs C-E and H of the REO.  Unquestionably, the public interest is served by enjoining application of the cited provisions of the REO.

The Motion for a Preliminary Injunction (Docket # 3) is ALLOWED.  The parties shall jointly submit a proposed order within 14 days.


    April 18, 2012                    /s/Rya W. Zobel
DATE                          RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE