# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MERIT CONSTRUCTION ALLIANCE;   )
GRASSESCHI PLUMBING & HEATING,  )
INC.; D'AGOSTINO ASSOCIATES, INC.;  )
and DAVID ROSS,                   )
       Plaintiffs,             )
                         )       C.A. No. 1:12-cv-10458
v.                        )
                         )
CITY OF QUINCY,          )
       Defendant.            )

## CITY of QUINCY REPLY MEMORANDUM

The city of Quincy ("Quincy") submits this reply memorandum in response to the arguments raised by plaintiffs in their memorandum supporting their motion for partial summary judgment. Quincy files this reply in accordance with the provisions of this court's order, entered - upon agreement of the parties - following a September 26, 2012 teleconference.

> *"...an employee benefit program not funded through a separate fund*
> *is not an ERISA plan."*

*California Div. of Labor Standard Enforcement v. Dillingham Construction N.A. Inc.*
519 U.S. 316, 325 (1997).

I.     SUMMARY OF REPLY

With each party having submitted its summary judgment memorandum, the battle is now joined in this litigation ... or, at the least, more narrowly focused. When the parties first appeared before the court in March of this year, the entirety of Quincy's

Responsible Employer Ordinance was presented for review – by a court which just last year completed a review of a nearly identical ordinance.   Much of that initially in dispute has been resolved, however, leaving only the issue of whether an apprentice provision in the ordinance is subject to pre-emption.

The parties have narrowed this issue even further, particularly because they agree on the applicable legal framework: a "two-part inquiry" focusing on whether a challenged ordinance "[1] has a connection with or [2] reference to" an employee benefit plan, which is protected under ERISA.  *California Div. of Labor Standard Enforcement v. Dillingham Construction N.A. Inc.*  519 U.S. at 324.

Plaintiffs concede that because their apprentice programs are not funded or administered using separate trust accounts – they are instead funded out of the employer's general funds – this is not a case of an ordinance that has a "reference to" an employee benefit plan.  They therefore focus on the "connection with" prong in pressing their motion.[1]  Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment at pp. 11-13.[2]  The focus of this summary judgment dispute, Quincy therefore asserts, is an analysis of the "connection with" prong, only.  And in resolving that dispute, Quincy respectfully refers to the quoted excerpt from the *Dillingham* case, above, a theme developed more fully, below.

The problem with plaintiffs' analysis in that regard is they next invite the court to determine whether the ordinance mandates an apprentice program – asserting that where there exists a mandate, there exists a connection.  That is not how the Supreme Court analyzes the "connection with" prong, however.  Rather, the Supreme Court focuses on

---

[1] In making this concession, plaintiffs point to the analytical framework first enunciated by the Supreme Court in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96-97 (1983).

[2] References to this memorandum shall hereinafter be denoted "Plaintiffs' Memo at p. _____."

the economic effects of the mandate to determine whether those effects "force an ERISA plan" to make particular choices (a point plaintiffs acknowledge in their memorandum at p. 14.) *California Div. of Labor Standard Enforcement v. Dillingham Construction N.A. Inc.* 519 U.S. at 334.

Thus, a benefit must first be funded by the employer before it is subject to ERISA protection, for without such funding, there is no impact on an ERISA plan.  As discussed more fully below, the categories of benefits listed in 29 U.S.C. § 1002(1) – relied upon by this court in its decision in *UCANE v. Fall River,* and in its grant of a temporary restraining order in this action - is not intended to establish a list for pre-emption purposes.  Rather, it is intended to set forth the categories of benefits which – if the employer chooses to fund such benefits – will be protected under ERISA.

.     It is the mandate of choices that is of concern in the pre-emption realm, as such mandates require ERISA plan coordinators to conform with a particular state's requirements, which will certainly vary across the country.  Such variance would frustrate Congress's intent "to ensure plans and plan sponsors would be subject to a uniform body of benefits law; the goal [being] to minimize the administrative and financial burdens of [compliance}." *Ingersoll-Rand v. McClendon,*  498 U.S. 133, 142 (1990).

Absent such an impact, however, there is no pre-emption; this important distinction is discussed in this reply memorandum.

II.   LEGAL ARGUMENT

A.   The "Connection with" analysis

The parties agree, as they must, that the controlling law here received its fullest

explication in the seminal *Dillingham* decision, where the Supreme Court explained

ERISA's object and policy thusly:

> "In enacting ERISA, Congress' primary concern was with the
> mismanagement of funds accumulated to finance employee benefits and
> the failure to pay employees benefits from accumulated funds. To that
> end, it established extensive reporting, disclosure, and fiduciary duty
> requirements to insure against the possibility that the employee's
> expectation of the benefit would be defeated through poor management by
> the plan administrator. Benefits paid out of an employer's general assets
> presented risks indistinguishable from "the danger of defeated
> expectations of wages for services performed," a hazard with which
> ERISA is unconcerned. *Ibid.*

*California Div. of Labor Standard Enforcement v. Dillingham Construction N.A. Inc.*

519 U.S. at 326-327, citing *Massachusetts v. Morash, 490* U.S. 107, 115 (1989).

The Supreme Court has made clear that it is the protection of the funding plans, and those

that administer them, that is within the broad scope of ERISA.  That purpose is to insure

that plans are not "subject to different legal obligations in different states," as that would

thwart Congressional intent in enacting ERISA - to provide security for employee's

retirement and income funds.  *Conkright v. Frommert,* 559 U.S. __, 13 (2010), 130 S.Ct.

1640, 1651 (2010).  Plaintiffs acknowledge this fact on Page 14 of their summary

judgment memorandum.

Reviewing courts consistently look first to the statute's objectives – not its

confusing language – to resolve these disputes.  See, e.g., *Minnesota Chapter of*

*Associated Builders & Contractors, Inc. v. Minnesota Dep't of Public Safety*, 267 F. 3d

807 (2001)(" We simply must go beyond the unhelpful text and the frustrating difficulty

of defining its key term, and look instead to the objectives of the ERISA statute as a

guide to the scope of the state law that Congress understood would survive." Id. at 812.)

Applying ERISA's object and policy to plaintiffs' theory - that all apprentice

programs, so long as they are mandated, are subject to ERISA protection – readily reveals

why that theory must be rejected.

First, such a conclusion would lead to the anomalous result, sought here, that

employers who did not fund apprentice training programs would gain the benefit of

federal protections designed to protect trust funds, notwithstanding the fact such funds do

not exist.  Plaintiffs Grasseschi and D'Agostino each readily acknowledge that their

company has not set aside funding to address apprentice training.  Yet, they seek

protection under a statutory scheme designed to protect against "mismanagement of

funds accumulated to finance employee benefits."  *California Div. of Labor Standard*

*Enforcement v. Dillingham Construction N.A. Inc.*  519 U.S. at 326.   There being nothing

to protect, there is no basis to afford them that protection.

Second, the categories of benefits listed in 29 U.S.C. § 1002(1) is not intended to

establish a list for pre-emption purposes.  Rather, it is intended to set forth the categories

of benefits which – if the employer chooses to fund such benefits – will be protected

under ERISA.  Once that fund is established, it is protected.  As the *Dillingham* court

explained: "[t]he existence of that fund triggers ERISA coverage ... (citing  ERISA

Advisory Op. No. 94-14A [Apr. 20, 1994]).  But an employee benefit program *not*

funded through a separate fund is not an ERISA plan. Id.

Finally, ERISA does not address apprentice-training standards. Its sole concern in the realm of apprentice training is protection of trust funds set aside for that purpose. Id. at 330.

It is therefore implausible to argue, as plaintiffs do here, that the "connection with" prong is met by virtue of the fact that Quincy's ordinance requires apprentice training on public jobs. The ordinance is completely consistent with The Fitzzgerald Act, 29 U.S.C. § 50 - a long-standing federal statute that encourages states to maintain apprentice programs such as those found here. *Associated Builders & Contractors v. Michigan Dep't. of Labor and Econ Growth,* 543 F. 3d 275, 282-283 (6th Cir. 2008) cert. denied 129 S.Ct. 1616 (2009). It does not prescribe any standards or funding requirements, as did the statute and rules enacted in the Minnesota sprinkler case relied on by plaintiffs in their memorandum.[3]

And, most importantly, the apprentice provision of the Quincy ordinance does not implicate an ERISA plan or administrator in this case – as no such fund exists for apprentice training purposes. Quincy readily conceded at the outset of this case that the extent to which its ordinance applied to retirement or income matters – pension, health and hospitalization benefits, and payment of wages – it was subject to ERISA. Quincy did not concede that point as to apprentice training, however, as it was aware – and the parties have stipulated – that the plaintiffs do not reserve funds in trust for purposes of apprentice training. Although plaintiffs imply (primarily in Section 1B of their argument where they reference "ERISA plans" "ERISA administrators" and "ERISA schemes") that their apprentice participation implicates ERISA, that is not the case. Quincy's fact

---

[3] *Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minnesota Dep't of Public Safety,* 267 F. 3d 807 (2001)

stipulation, filed with its motion for partial summary judgment, includes the concession that the plaintiffs before this court do not fund their apprentice programs – and they are therefore not entitled to claim aggrievement regarding ERISA plans, or as ERISA administrators.

B.  Plaintiffs "connection with" argument is not supported by the cited case law.

Plaintiffs argue, at pp. 14-15 of their memorandum, that a series of cited cases provide support for their position that Quincy's apprentice mandate is pre-empted. Reliance on the cited cases, however, is inapposite, as in each cited instance, the cases involved funds set aside for employee benefits.[4]

*Rush Prudential HMO Inc.* (further regulation of employee health plans), *Greater Washington* (further regulation of employee health plans), *FMC* (state law barring exercise of subrogation rights to recover benefits paid under employee health plans), *Metropolitan Life* (requirement that mental health coverage be included in all general health policies) and *Shaw* (further regulation regarding pregnancy regarding health plans) each relate to regulation of employee health plans – plans which are funded by employers who set aside funds for that purpose, which Quincy concedes to be within the realm of ERISA.  None of these cases speak to the sort of issue presented here – whether an apprentice requirement, with nothing more, implicates the statute.

Interestingly, one of the cases cited, *Fort Halifax Packing Co. v. Coyne,* (482 U.S. 1 [1987]) does pose a similar question, and the Supreme Court found pre-emption not to

---

[4] To facilitate both the reading, and writing, of this paragraph, citations to the referenced cases are omitted. Counsel for Quincy respectfully refers the reader to pp. 14-15 of plaintiffs' memorandum for proper citation.

be applicable. There, the court addressed a Maine statute that required a one-time severance payment upon the closing of a plant. The plant owner argued that severance pay was one of the enumerated benefits in 29 U.S.C. 1002(1)(B) and therefore subject to ERISA pre-emption.

The court rejected plaintiff's "basic argument… that any state law pertaining to a type of employee benefit listed in ERISA necessarily regulates an employee benefit plan, and therefore must be pre-empted." Id. at 7. The argument posed in *Fort Halifax* was quite similar to that posed here:

> Because severance benefits are included in ERISA, see 29 U.S.C. 1002(1)(B), appellant argues that ERISA pre-empts the Maine statute. In effect, appellant argues that ERISA forecloses virtually all state legislation regarding employee benefits." Id.

The court went on to hold, however, "this contention fails, however, in light of the plain language of ERISA's pre-emption provision, the underlying purpose of that provision, and the overall objectives of ERISA itself." Id.

Those objectives, discussed more fully above, relate to the protection of employee funds held in trust for the purposes of providing benefits. No such funds existed in Maine, where the claim was for a one-time severance after the plant closed. No such funds exist in this case, and for that reason, plaintiffs' contentions regarding Quincy's ordinance must fail, under the reasoning cited in *Fort Halifax*.

.

C.    *Fort Halifax and the distinction between a benefit and a plan*

In its Memorandum of Decision resulting in the grant of a temporary restraining order in this action, this court relied on the fact that "Apprenticeship Programs" are defined as employee benefits plans under 29 U.S.C. § 1002(1), and referred to its earlier

discussion in *UCane* for further explanation.  There, the court explained, that "[t]here is little doubt that an explicit decree to put into existence a benefit program 'relates to' an 'employee benefit plan' for ERISA purposes."  *UCane v. Fall River* No 10-10994-RWZ, 2011 WL 4710875, 9 (D.Mass. Oct 4, 2011).

This court, however, is not presented with a comprehensive benefit plan.  It is merely presented with a complaint – similar to that raised in *Fort Halifax* with the Maine severance pay requirement – that a particular benefit requirement is violative of ERISA. Like the Maine scenario, however, there is no plan implicated in this case, a fact readily acknowledged by the plaintiff corporations.

This distinction is important, as the *Halifax* court explained that ERISA's preemption provision does not refer to state laws relating to "employee benefits," but instead to state laws relating to "employee benefit plans." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. at 8.

The court went on to explain, as Quincy presses here:

> "These statements reflect recognition of the administrative realities of employee benefit plans. An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others." Id. at 10.

It is this uncertainty that ERISA was enacted to prevent.  It is not intended to act as a shield for employers relative to all of its enumerated benefits.  Merely those which the employer chooses to fund, the intention of Congress being to provide incentives for such funding, and to streamline administration of such plans so as to avoid unnecessary expense.

The absence of a funded apprentice plan poses a "formidable obstacle" to the plaintiffs here.  Id. at 8.  The plaintiffs do not administer to trust funds to finance the program, and do not allege – nor could they – that they experience the sort of administration problems that ERISA protection was intended to protect against.

That Quincy seeks to retain its apprentice provision only, leaves the plaintiffs with no "benefit plan" for this court to protect.  There is no trust fund involved, no administrative burden claimed and, therefore, no ERISA interest implicated.  The challenge to this particular provision of the ordinance must therefore fail.


IV.    CONCLUSION

For these reasons, those set forth in the memorandum accompanying Quincy's motion for partial summary judgment, and those raised at oral argument, Quincy respectfully asserts that it is entitled to a summary finding by this court that the apprentice training provision of its municipal ordinance is not violative of, or pre-empted

by, the provisions of ERISA.  Upon such a finding, Quincy requests the entry of a

declaration to that effect in disposition of Count III, and a dismissal of the claims in

Count VIII, as they relate to the apprentice training provision.

By its attorney,

James S. Timmins  BBO # 547512
City Solicitor
City of Quincy
1305 Hancock Street
Quincy MA 02169
(617) 376-0700
jtimmins@quincyma.gov

### CERTIFICATION OF SERVICE

I hereby certify that I have filed this document through the ECF system, which provides
for electronic service on registered participants; counsel for all parties are so registered,
and will be identified in the Notice of Electronic Filing.

James S. Timmins