UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MERIT CONSTRUCTION ALLIANCE;　)
GRASSESCHI PLUMBING & HEATING,　)
INC.; D'AGOSTINO ASSOCIATES, INC.;　)
and DAVID ROSS,　)　　C.A. No. 1:12-cv-10458
　　Plaintiffs,　)
　)
v.　)
　)
CITY OF QUINCY,　)
　　Defendant.　)

## MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF QUINCY'S MOTION FOR SUMMARY JUDGMENT

The parties filed cross motions for summary judgment with respect Plaintiffs' claim that the mandatory apprenticeship requirement ("Apprenticeship Requirement") contained in Quincy's Responsible Employer Ordinance ("REO") is preempted by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs submit this memorandum in opposition to Quincy's motion (Doc. #21), and also rely on, and incorporate by reference, Plaintiffs' earlier summary judgment memorandum and supporting papers. (Docs. #23, #24, and #25).

As anticipated, Quincy urges that there are essentially two undisputed facts which serve to distinguish this case from those where similar mandatory regulations were held to be void on preemption grounds. First, argues Quincy, neither of the apprenticeship training programs operated by Plaintiffs Grasseschi Plumbing & Heating, Inc. ("Grassechi") and D'Agostino Associates, Inc. ("D'Agostino") are funded in a manner which subjects those plans to ERISA oversight. Secondly, Quincy contends that its Apprenticeship Requirement does not compel any employer to adopt an ERISA-governed funding mechanism for any apprenticeship training program. While both

1

statements are factually true,[1] neither is dispositive—nor even relevant—to the core legal issues that control the preemption question here.

Quincy's Apprenticeship Requirement mandates that all contractors bidding on public work operate and maintain a state registered apprenticeship training program as an employee benefit. The ordinance is of sufficient breadth that it imposes this requirement, alike, on those employers who maintain ERISA-governed plans and those who do not. Thus, the Apprenticeship Requirement—being a compulsory directive rather than an indirect financial or economic inducement—must fail under the "connection with" prong of the Shaw framework. *See* California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 328–34 (1997); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995); *see also* discussion on pages 13–17 of Pls.' Memo in Supp. of Sum. J. (Doc. #24).

It is undisputed that most, if not all, of the union-sponsored apprenticeship training programs in the Commonwealth are separately-funded, ERISA-governed plans subject to Quincy's Apprenticeship Requirement. The fact that some apprenticeship training programs in Massachusetts are not ERISA plans has no bearing on the "connection with" analysis. In Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), for example, a New York statute prohibiting employer discrimination on the basis of pregnancy was held to be preempted by ERISA even though not all of the employers subject to the law used separately-funded, ERISA-governed plans. The Court's subsequent reliance on Shaw in Dillingham, 519 U.S. at 328, demonstrates Shaw's continuing vitality. In Dillingham, as

---

[1] Quincy overlooks the undisputed fact that some of Plaintiff Merit Construction Alliance's member contractors do not maintain or participate in apprenticeship programs. Verified Compl. at ¶ 4 (Doc. #1). Other members maintain or participate in apprenticeship programs, but have not graduated and upgraded apprentices for each apprentice-able trade or occupation represented in their workforce within the past twelve calendar months. *Id.*

part of its evaluation of California's apprenticeship wage law under the "connection with" prong, the Court distinguished Shaw not because some California apprenticeship plans were directly funded out of employers' general assets, but because the California statute worked only economic inducement and not compulsion:

> It cannot be gainsaid that [the California statute] has the effect of encouraging apprenticeship programs—including ERISA plans—to meet the standards set out by California, but it has not been demonstrated here that the added inducement created by the wage break available on state public works projects is tantamount to a compulsion upon apprenticeship programs.
>
> * * *
>
> The prevailing wage statute alters the incentives, but does not dictate the choices, facing ERISA plans.

Dillingham, 519 U.S. at 333–34. Similarly, the Blue Cross Court made the same distinction, after first observing that a review under the "connection with" prong was necessary despite the fact that the New York law at issue in that case applied to many who were not part of any separately-funded, ERISA-governed plan:

> The surcharges are imposed upon patients and HMOs, regardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan, private purchase, or otherwise, with the consequence that the surcharge statutes cannot be said to make a "reference to" ERISA plans in any manner. . . . **But this still leaves us to question whether the surcharge laws have a "connection with" the ERISA plans,** . . .

Id., 514 U.S. at 656 (emphasis added). Under the "connection with" prong, the Blue Cross Court ultimately upheld the New York surcharge statute because it presented employers with "[a]n indirect economic influence" that did not "bind plan administrators to any particular choice." Id. at 559.

Contrary to Quincy's contention, the Court in Dillingham and Blue Cross did not "look[] beyond the fact that the state law in question constituted a mandate." Def.'s Memo. in Supp. of Sum. J. at 5 (Doc. #26). Rather, those cases demonstrate and confirm that the mandate question—the

3

inquiry into whether a challenged law compels employers' benefit plan choices—is the linchpin of the "connection with" analysis.

While Quincy's Apprenticeship Requirement does not exclusively address itself to plans which utilize an ERISA-type funding mechanism, it nevertheless imposes a rigorous set of mandatory training program requirements on all employers, including those who do participate in ERISA-governed plans. Under the "connection with" prong of the analysis, this is forbidden. *See* Dillingham, 519 U.S. at 328–34; Blue Cross, 514 U.S. at 656 (1995). Quincy's Apprenticeship Requirement is not just "tantamount to a compulsion," Dillingham, 519 U.S. at 34, it explicitly compels employers' choices. *See* Pls.' Exhibit A (Doc. #23-1). Quincy even admits this. *See* Pls.' Exhibit F (Doc. 23-6).

Rather than defend the validity of its Apprenticeship Requirement under the relevant "connection with" prong, Quincy opts instead to argue elements of the "reference to" prong. Specifically, Quincy cites Massachusetts v. Morash, 490 U.S. 107 (1989) and 29 C.F.R. § 2510.3-1(b) to highlight the long-recognized distinction between separately-funded employee benefit programs covered by ERISA and the many other kinds of employee benefits, including regular compensation and payroll practices, which are not so covered. Plaintiffs do not dispute the existence of this distinction. It is an important part of the "reference to" prong of the preemption analysis. Yet as the Plaintiffs made clear in their own summary judgment memorandum, they are not urging preemption under the "reference to" prong. *See* Pls. Memo. in Supp. of Sum. J. at 12–13 (Doc. #24). In essence, Quincy has devoted much of its memorandum to attacking a strawman.

Similarly, Quincy's reliance on the Fitzgerald Act, 29 U.S.C. § 50 *et seq.*, and various sections of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, is wholly misplaced. Quincy has cited no authority—nor could it—for the proposition that the Fitzgerald Act

4

compels public bidders to establish or maintain state registered apprenticeship training programs or that it somehow authorizes localities to independently impose such mandates. Indeed, it does no such thing. *See, e.g.*, Dillingham, 519 U.S. at 332 n.10 ("Suffice it to say that the federal and state apprenticeship standards are **not mandatory** . . .")(emphasis added). While the LMRA may allow or disallow many kinds of financial transactions vis-à-vis signatories to collective bargaining agreements, *see, e.g.*, 29 U.S.C. § 186(c)(5), Quincy has cited no provision of that federal statute which empowers it to compel public bidders to establish or maintain any state-registered apprenticeship training program.

Notably, Quincy makes no effort whatsoever to distinguish the apprenticeship provisions of the Quincy REO from those of Fall River's similar ordinance which was stricken in Utility Contractors Ass'n of New England, Inc., v. City of Fall River, 2011 WL 471085, Civil Action No. 10-1994-RWZ (D. Mass. Oct. 4, 2011)("UCANE"). As set forth in Plaintiffs' prior summary judgment memorandum, the two ordinances, for purposes of the preemption analysis, are identical. *See* Pls.' Memo. in Supp. of Sum. J. at 20–21 (Doc. #24). Both are mandatory in that they bind the employee benefit choices of all public bidders, inclusive of those who operate ERISA-governed plans.

## Conclusion

Quincy implicitly urges the Court to reconsider its prior decision in UCANE, but it has articulated no valid grounds for this Court to do so. For the reasons set forth above and in the Plaintiffs' prior memorandum, the Court should deny Quincy's motion for summary judgment

(Doc. #21); grant Plaintiffs' motion for partial summary judgment (Doc. #23); and permanently enjoin Quincy from enforcing the Apprenticeship Requirement.

    Respectfully Submitted,

    MERIT CONSTRUCTION ALLIANCE;
    GRASSESCHI PLUMBING & HEATING,
    INC.; D'AGOSTINO ASSOCIATES, INC.; and
    DAVID ROSS,

    By Their Attorneys,

    /s/ Christopher C. Whitney
    Christopher C. Whitney (BBO #547104)
    cwhitney@lmkbw.com

    /s/ Scott K. Pomeroy
    Scott K. Pomeroy (BBO #665110)
    spomeroy@lmbkw.com
    LITTLE MEDEIROS KINDER BULMAN &
    WHITNEY, P.C.
    72 Pine Street
    Providence, RI 02903
    (401)272-8080
    (401)272-8195 fax

Dated: December 3, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2012, I caused a true copy of the within Memorandum in Opposition to Quincy's Motion for Summary Judgment to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

James S. Timmons, Esq.
(jtimmins@quincyma.gov)
(jtimmins@cronintimmins.com)
City Solicitor
CITY OF QUINCY
1305 Hancock Street
Quincy, MA 02169

/s/ Christopher C. Whitney