## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERIT CONSTRUCTION ALLIANCE;<br>GRASSESCHI PLUMBING & HEATING,<br>INC.; D'AGOSTINO ASSOCIATES, INC.;<br>and DAVID ROSS,<br>     Plaintiffs,<br><br>v.<br><br>CITY OF QUINCY,<br>     Defendant. | )<br>)<br>)<br>)     C.A. No. 1:12-cv-10458<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF CHRISTOPHER C. WHITNEY
## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

I, Christopher C. Whitney, being duly sworn, depose and say as follows:

1.    I am over the age of eighteen (18).

2.    I am an Attorney for the Plaintiffs in this matter, and I am a partner at the law firm of Little Bulman Medeiros & Whitney, P.C. ("LBMW"), formerly known as Little Medeiros Kinder Bulman & Whitney, P.C.  As the partner at LBMW responsible for litigating this matter, I have personal knowledge of the information set forth in this Affidavit.

3.    A copy of my curriculum vitae, indicating my professional background and experience, is attached hereto as Exhibit A.  My customary billable rate is $350 per hour.  This rate is in accordance with prevailing market rates in Providence, where my office is located, and well below the prevailing market rates in Boston for lawyers of comparable skill, experience, and reputation.  For this representation, I billed the Plaintiffs at a discounted rate of $325 per hour.

4.    In addition to myself, attorneys Scott K. Pomeroy and Katherine E. Kohm also billed time to this matter.  Mr. Pomeroy is also a partner at LBMW.  A copy of his curriculum

1

vitae is attached hereto as Exhibit B, and his customary billable rate is $275 per hour.  Ms. Kohm

is an associate at LBMW.  A copy of her curriculum vitae is attached hereto as Exhibit C, and

her customary billable rate is $240 per hour.  Mr. Pomeroy's and Ms. Kohm's customary rates

are in accordance with prevailing market rates in Providence, where LBMW's office is located,

and well below the prevailing market rates in Boston for lawyers of comparable skill, experience,

and reputation.  For this representation, LBMW billed the Plaintiffs for Mr. Pomeroy's services

at a discounted rate of $230 per hour and billed for Ms. Kohm's services at a discounted rate of

$195 per hour.

5.      From the outset of LMBW's engagement in this matter until December 31, 2012,

the Plaintiffs incurred and paid legal fees totaling $81,007.85.  LBMW's monthly invoices which

reflect the contemporaneous billing records of myself, Mr. Pomeroy, and Ms. Kohm are attached

as Exhibit D.

6.      Plaintiffs filed this suit to challenge Quincy's attempted enforcement of the so-

called Responsible Employer Ordinance ("REO").  As set forth in Plaintiffs' Verified Complaint

(Doc. #1), the REO contains an unconstitutional residency requirement and health, pension, and

apprenticeship plan requirements that violate various provisions of federal and state law.

Plaintiffs' goal in this litigation was to prevent Quincy from imposing its anti-competitive and

unlawful REO on bidders for the New Central Middle School construction project or any other

public project.

7.      Legal action became necessary here because of Quincy's refusal to heed prior

decisions of this Court striking substantially identical ordinances on substantially identical

grounds.  As recently as October of 2011, for example, this Court struck down a nearly identical

Fall River ordinance in the case of Utility Contractors Ass'n v. City of Fall River, Case No. 10-

10994-RWZ, 2011 WL 4710875 (D. Mass. October 4, 2011)("UCANE"). There, the Court held

unequivocally that Fall River's residency requirement violated the Privileges and Immunity

Clause of the United States Constitution and that Fall River's health, pension, and apprenticeship

plan requirements were preempted by the Employee Retirement Income and Security Act

("ERISA").

8.      Notwithstanding such clear precedent, Quincy announced, just days before the

deadline for bids on the Middle School project, that all bidders would be compelled to comply

with the residency and apprenticeship plan requirements of its REO. The timing of Quincy's

announcement required the Plaintiffs to engage counsel, prepare a legal challenge, and seek

immediate injunctive relief all on extremely short notice. Given the variety and complexity of

the legal issues involved, the preparation of verified pleadings, legal memoranda, and other

necessary papers required a substantial outlay of attorney time that precluded work for other

clients.

9.      As Exhibit D shows, Plaintiffs' counsel spent substantial time in March 2012

researching the legal bases for claims to be asserted, preparing the verified complaint, drafting

motion papers in support of injunctive relief, and preparing for and attending hearings on such

motions.

10.      At the hearings on Plaintiffs' request for preliminary injunctive relief, Quincy

conceded that the REO's health and pension plan requirements were indeed preempted by

ERISA, just as Plaintiffs' alleged in bringing suit. However, despite an inability to articulate

how this case differs in any material way from the facts in UCANE, Quincy nevertheless

maintained that its residency requirement was constitutionally permissible and that its

apprenticeship plan requirement was not preempted by ERISA. Upon full briefing and argument

of the issues by the parties, the Court granted the Plaintiffs' request for a preliminary injunction

as to all challenged parts of the REO on March 27, 2012. (Doc. #12.)

11.     For the next six months, the parties conducted discovery limited to questions of

the constitutional validity of Quincy's residency requirement and whether ERISA preemption

bars the REO's apprenticeship requirement.  As show by Exhibit D, from April to October 2012,

Plaintiffs' counsel dedicated significant time to these discovery efforts and to preliminary legal

research in anticipation of summary judgment motions on both issues.  Only at the end of

October, when Quincy's discovery responses confirmed the absence of any constitutionally

sound basis for the REO residency requirement, did Quincy finally concede the residency issue.

12.     On October 31, 2012, Quincy, through counsel, conceded that the REO's

residency requirement was unconstitutional.  From that point on, the only core legal question

remaining in the case was whether Quincy's apprenticeship plan requirement was preempted by

ERISA.

13.     In November, the parties filed cross motions for summary judgment on the REO's

apprenticeship plan requirement, the only remaining component of the ordinance that Quincy

still sought to enforce.  As Exhibit D shows, Plaintiffs' counsel spent substantial time preparing

Plaintiffs' summary judgment papers and their opposition to Quicy's cross-motion.

14.     The Court heard oral argument on the summary judgment motions in December

2012.  Highlighting the extent to which its position lacked substantial merit, Quincy's summary

judgment arguments largely repeated points that this Court already rejected in UCANE.  Given

the correctness of that decision, and the fact that Quincy's attempt to impose an apprenticeship

requirement here was materially indistinguishable from Fall River's earlier unlawful attempt to

do the same thing, the Court duly granted summary judgment in Plaintiffs' favor as to the

apprenticeship issue.  (*See* Doc. #34.)

15.     With entry of summary judgment, Plaintiffs have achieved all of the objectives of their suit, including a complete vindication of their constitutional rights.  Given the manner in which the Court resolved the constitutional and ERISA issues, there was no need for the Court to reach the various state-law arguments advanced by Plaintiffs as alternative legal grounds for relief.

16.     The time spent by Plaintiffs' attorneys, as reflected in LBMW's monthly invoices, was reasonable and necessary in light of the course of the litigation and the complexity of the legal factual issues in the case.  As Plaintiffs have prevailed with respect all of the parts of Quincy's REO that they challenged—*i.e.*, the residency requirement, the health and pension plan requirements, and the apprenticeship requirements—no part of Plaintiffs' attorneys' time was spent on unsuccessful claims.

17.     Accordingly, and for the additional reasons set forth in the supporting memorandum filed herewith, the Court should grant Plaintiffs a full compensatory award of attorneys' fees in the amount of $81,007.85.

_____
Christopher C. Whitney

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

On this 7th day of March, 2013, before me, the undersigned notary public, personally appeared Christopher C. Whitney, personally known to the notary, who swore or affirmed to the notary, that the contents of this document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public
My Commission Expires: 10/5/13

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on this 8th day of March, 2013, I caused a true copy of the within Affidavit to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

James S. Timmons, Esq.
(jtimmins@quincyma.gov)
(jtimmins@cronintimmins.com)
City Solicitor
CITY OF QUINCY
1305 Hancock Street
Quincy, MA 02169


                    /s/ Christopher C. Whitney