UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERIT CONSTRUCTION ALLIANCE; GRASSESCHI PLUMBING & HEATING, INC.; D'AGOSTINO ASSOCIATES, INC.; and DAVID ROSS, <br>     Plaintiffs, <br><br> v. <br><br> CITY OF QUINCY, <br>     Defendant. | C.A. No. 1:12-cv-10458 |

**OPPOSITION of the CITY of QUINCY
TO PLAINTIFFS' MOTION FOR
AWARD OF ATTORNEY'S FEES**

The city of Quincy ("Quincy") opposes the plaintiffs' motion for an award of attorneys' fees. The basis for its opposition is as follows.

In presenting this opposition, Quincy is mindful that the court may find itself questioning whether Samuel Coleridge's *Rime of the Ancient Mariner*[1] has found its way into the common law, as Quincy repeats many of the arguments that the court has previously heard and rejected. The discussion is warranted, however, in light of the standards applicable to fee awards, as discussed below.

I.     BACKGROUND

This litigation arises out of the application of a municipal ordinance promulgated by Quincy on May 17, 2010 to a school construction project it was set to put out to bid in

---

[1] A poem in which a mariner is doomed to wander the earth repeating the same story of how he shot an albatross, as penance for the act.

March of 2012 .[2] Following the passage of the ordinance, and prior to the March bid, this court reviewed and then enjoined a different ordinance, with similar provisions, passed by the City of Fall River. The injunctive order entered in that action, dated October 4, 2011, represented the first judicial review of an ordinance of this nature within the First Circuit ("the Fall River decision").[3]

Both the Quincy and Fall River ordinances – so-called Responsible Employer Ordinances – required compliance with certain benefit mandates for all contractors bidding on public projects in the respective cities. As Quincy brought its school project on line for bidding in March of 2012, significant discussion over the Fall River decision caused Quincy to suspend application of parts of the ordinance to the bid – removing the mandates regarding health, welfare and pension benefits on March 7, 2012. Plaintiffs commenced this action days later, seeking injunctive relief as to the balance of the ordinance on the Central project, and the entirety of the ordinance on all other Quincy public projects.

The matter proceeded to a conclusion in this court – through a combination of stipulated outcomes and the entry of a summary judgment as to the one issue that remained contested – whether the ordinance's apprentice provision was pre-empted by the provisions of the Employee Retirement Income Security Act ("ERISA"). With the matter concluded in the trial court, Plaintiffs now seek recovery of their legal fees for the entire litigation.

"In the United States, the prevailing litigant is ordinarily not entitled to collect

---

[2] All facts referenced in this memorandum are taken from this court's findings, as set forth in its Memorandum of Decision dated April 18, 2012 and/or its Memorandum of Decision dated February 1, 2013. For the reader's convenience, citations are omitted.
[3] There remains no appellate review within the First Circuit.

a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). This is known as the "American rule" and is subject to various statutory exceptions, two of which are relied on by the plaintiffs in pressing their claim for fees here – 42 U.S.C. § 1988 and 29 U.S.C. § 1132(g)(1). This opposition will review those provisions in light of the issues and outcome in this litigation.

II.   LEGAL STANDARD

The parties agree that certain legal propositions apply to the court's consideration of plaintiffs' motion. First, whether an award of fees is appropriate is a question directed to the sound discretion of the trial court under both Section 1988 and Section 1132. *Gay Officers Action League v. Puerto Rico* 247 F. 3d 288 (1st Cir. 2001)(Section1988); *Hardt v. Reliance Standard Life Insurance Co.,* 130 S.Ct. 2149, 2157–58 (2010)(Section 1132).

The parties further agree that if an award is to be made, it is to be calculated using the so-called "lodestar" method: "the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983).

The Section 1988 claim seeks fees in relation to the claims arising out of the residency requirement under the ordinance. To recover fees under Section 1988, plaintiffs must establish their status as a "prevailing party" (Id. at 433). That is the focus of Quincy's opposition below.

The Section 1132 claim seeks fees in relation to the remaining parts of the ordinance that mandated certain benefits this court found to be protected under ERISA. The exercise of discretion as to a Section 1132 claim for legal fees is guided by a multi-

3

prong test. *Gray v. New England Tel and Tel. Co.,* 792 F. 2d 251, 257-258 (1st Cir. 1986). That test, and its application to the facts here, is discussed below.

    III.    ANALYSIS

    A.    SECTION 1988 CLAIM

The Section 1988 claim poses an interesting issue to the court. Upon a review of Exhibit D, the legal bills of counsel for the plaintiffs, it is clear that the bills were submitted to, and paid by, one plaintiff: Merit Construction Alliance. That fact bears out an underlying theme in this case – this was a challenge of a municipality's ordinance that was perceived to be a "pro-union" ordinance, mounted by a trade association of non-union contractors.

That dynamic takes on significance because within the First Circuit, "obtaining equitable relief[4] does not automatically confer prevailing party status for purposes of [Section 1988]." *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 293 (1st Cir. 2001)(citations omitted). "An inquiring court always must make a qualitative inquiry into the import of the relief obtained" when determining whether to grant an award of fees. Id.

It is clear, as was acknowledged by Quincy in its handling of the residency issue, that the requirement within the ordinance was violative of the Privileges and Immunities and Equal Protection clauses of the United States Constitution. That issue, however, was addressed in somewhat of a vacuum – as the nominal plaintiffs here, D'Agostino, Grasseschi and David Ross, never presented any evidence of harm or damage as a result of that provision in the ordinance.

---

[4] The claims in the complaint, and the relief granted by the court in this action, were purely equitable in nature.

In fact, Quincy presented contrary evidence on the issue of harm – in the form of two exhibits and an affidavit by the city's procurement officer, Kathryn Hobin (Ex 1 to Docket #5; and, Docket No. 7). The information revealed that both of the corporate plaintiffs successfully completed the city's pre-qualification process – and were notified of that fact in September of 2011. Each was eligible to bid on the project, yet did not.

The foregoing is submitted not to re-argue the case. Rather, in considering "the import of the relief obtained" under a Section 1988 analysis – one can see that the outcome had no direct impact on three of the four plaintiffs. Moreover, a review of the plaintiffs' legal bill (discussed below) reveals that the time spent on this matter was not significant – further highlighting that this issue was not of paramount importance in terms of the overall goal of the litigation to the one party that might enjoy "prevailing" status: Merit Alliance.

While the city proffered (in good faith) its rationale for sustaining its residency requirement at the TRO level, plaintiffs and this court never regarded the issue as anything other than a settled proposition of law; and the defendant acquiesced upon completing its own internal review of the legislative process in search of material responsive to the areas of concern raised by this court in its April 18, 2012 findings, where the court made clear it would be looking for "evidence that the city engaged in any extensive fact finding, conducted or commissioned any studies, or made any determination based on evidence.." that would support such an ordinance requirement. Memorandum of Decision (Document 10) at p. 5.

Over the course of the discovery period, Quincy sought documentary and/or other evidence germane to this issue, and its counsel remained in consistent contact with

5

plaintiffs' counsel over the course of discovery on this issue. When Quincy's review of the legislative record in this regard revealed that no such evidence would be forthcoming, it "requested to raise white flag on residency issue" as noted by Mr. Whitney in his November 1, 2012 entry on the November bill. Prior to that, there are two entries referencing the issue after the March bill (when this issue was contested at the TRO hearing): September 11 and October 28; and, one notation that ½ hour was spent on an "outline …on residency requirement issues… for the summary judgment motion" on October 30, 2012.

It is acknowledged that the matter was discussed by counsel during this time frame as part of the ongoing discussion referenced in the bill. However, the cumulative total of those discussions cannot have exceeded five hours.

The issue was not a technical one, and its resolution was achieved once Quincy completed its own internal review of records. Its resolution, therefore, is the very sort of mere "favorable statement of law [that] cannot bestow prevailing party status." *Farrar v. Hobby,* 506 U.S. 103, 112 (1992).

Quincy argues thusly not in support of the proposition that there should no award at all. It did press the issue at the TRO level (after abandoning other provisions that were equally well-defined), and kept the issue live throughout discovery in order to ascertain whether factual support existed for the court to consider the "substantial reason" analysis set forth in *Toomer v. Witsell*, 334 U.S. 385, 396 (1948).[5] Quincy did so in good faith, and consistent with the well-established and clear case law on the issue. It now argues that in light of the foregoing, a substantially modified award of legal fees is appropriate.

---

[5] *Toomer* is cited by the court in its residency analysis contained within its April 18, 2012 Memorandum of Decision.

6

Quincy respectfully submits that the appropriate legal fee under Section 1988 should not exceed $20,725.00 based on the following analysis:

ATTORNEY CHRIS WHITNEY      45 HRS X $325              =$14,625.00

ATTORNEY SCOTT POMEROY   20 HRS X $230              =$ 4,600.00

OTHER COUNSEL/SUPPORT       10 HRS X $150 (blended)   = $ 1,500.00

Mr. Whitney submitted timesheets indicating he devoted 121.3 HRS to this matter prior to the November 1 "white flag entry." The assignment of slightly under 40% of that total time to this issue is warranted in light of (i) the settled nature of the law applicable to the residency issue relative to the ERISA issues, (ii) his role as point person regarding contact with his client and other responsibilities on the matter, to which he devoted substantial amounts of his time, and (iii) a review of the itemized entries on the bill to glean specifics when possible.

In a similar vein, Mr. Pomeroy appears, based on the detail provided, to have spent 32 hours on this case prior to the month of June – during the inception of the litigation and the TRO process. He thereafter began to exclusively focus on the ERISA/apprentice issue.[6] The city submits that a little more than half of his time during that initial time frame should be fairly assigned to the residency issue, and included within the Section 1988 award.

For the foregoing reasons, and based on the record before this court, Quincy submits that a fair award of legal fees under Section 1988 would be $20,725.00.

---

[6] A fair reading of the bills leads to the reasonable conclusion that after the TRO phase, Mr. Whitney was primary on the residency issue; and Mr. Pomeroy primary on ERISA.

7

B.  SECTION 1132 CLAIM

Where, as here, an award of legal fees is sought by a party to an ERISA action, the First Circuit is clear on what factors the court is to consider in the exercise of its discretion. The factors are: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. *Gray v. New England Tel and Tel. Co.*, 792 F. 2d at 257-258. The test is a "flexible one…Not every factor must be considered in each case, …and no one should be dispositive." Id. at 258.

Importantly, recovery of attorneys' fees under ERISA is not considered automatic, and there is not the sort of presumption – as found within some statutory exceptions – in favor of the prevailing party. *Cottrill v. Sparrow Johnson & Ursillo, Inc.* 100 F. 3d 220, 226 (1996) citing *Gray v. NewEngland Tel & Tel* at 259.

Consistent with the First Circuit's guidance, Quincy focuses on all but the second factor as being germane here; starting with the first and fifth. Application of those factors here reveals the following.

1)  Culpability or bad faith/Relative Merits

Following the publication of the Fall River decision, counsel for Quincy (along with counsel for communities across the commonwealth) reviewed this court's application of the provisions of ERISA to Fall River's Responsible Employer Ordinance. Quincy then worked in a good faith manner to address the issues raised by the Merit

8

Alliance in this first and only challenge of Quincy's ordinance, notwithstanding the fact that the work was difficult. The law implicated by this challenge is complex and evolving.

For example, the main issue – whether the provisions of ERISA pre-empt the apprentice provision – was and is an issue that is the subject of continual litigation. As Justice Scalia noted in the seminal decision on the issue, *California Division of Labor Standards Enforcement v. Dillingham* (519 U.S. 316 [1997]) "applying the 'relates to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." Id. at 335. And, when reviewing a state law against an ERISA preemption challenge, the Supreme Court has directed that reviewing courts start with the presumption that the law is not preempted. *N.Y. State. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995).

Against this backdrop, Quincy considered numerous decisions where the court rejected pre-emption. Two examples: *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1 (1987)(ERISA only pre-empts laws relating to "employee benefit plans" not those relating merely to "employee benefits," as it is the administrative process that is intended to be protected); *Ingersoll-Rand v. McClendon,* 498 U.S. 133, 142 (1990)(purpose of ERISA's pre-emption provision it to ensure plans and plan sponsors are subject to uniform body of benefits law). Quincy reviewed these cases, applied what it understood to be this framework to its own ordinance, and made the following decisions:

- Quincy immediately concluded that health, welfare and pension benefits were intrinsically tied to administrative functions and benefits plans, suspended the

sections of the ordinance relating thereto prior to the filing of this suit, and agreed to their permanent suspension immediately thereafter. Those issues were never litigated.

- Quincy litigated the apprentice requirement, submitting the matter to the court on a brief statement of facts adduced by agreement of counsel (thereby insuring that plaintiffs expended very minimal legal fees and/or costs by eliminating discovery on this issue)

The foregoing is offered not in furtherance of some Coleridgian rant. Quincy acknowledges that this court has heard and rejected these arguments, but they become significant again in the context of this motion, as the first and fifth tests analyze the merits of the claims put forth, and whether they were asserted in bad faith. Quincy repeats these arguments here, as (i) the First Circuit does "not equate failure of proof with bad faith…" (*Gray v. New England Tel and Tel. Co.,* 792 F. 2d at 259); and, (ii) this court decided the apprentice issue under *Dillingham's* "connection with" prong – a "project doomed to failure."[7]

While these arguments were dismissed, they were put forth in good faith, in support of legislation designed to advance the training and education of the labor force working in Quincy, and supported by case law. These factors therefore militate against a fee award.

3. Deterrent effect

It is not disputed that, at the time Quincy passed the challenged ordinance, this court had not published its decision in *Fall River*. And, once passed, the legislation enjoyed a presumption of enforceability (see, *N.Y. State. Conf. of Blue Cross & Blue*

---

[7] *California Division of Labor Standards Enforcement v. Dillingham,* 519 U.S. at 335.

*Shield Plans v. Travelers Ins. Co.,* 514 U.S. at 654-55) that required the city to follow it until the time of this successful challenge. This court must now analyze whether an award of fees would deter others (presumably, municipal actors) in similar circumstances.

It is respectfully submitted that local governments need only guidance, and government actors will follow the proper direction as it relates to legislation. The manner in which Quincy acted throughout the course of this litigation is reflective of the fact that as it came to understand the issues with this ordinance, it took appropriate steps to insure that no one would be impacted from its unlawful provisions. The legislative process can be complex, and is far different from the typical sort of ERISA claim that involves denial or modification of claims or payments, and disputes between employers and employees.

The outcome here was instructive, involving a declaration of the rights and obligations of the parties along with other equitable relief. There were no damages awarded, nor any sought, as no party was harmed by the action of the other. This is not the sort of matter that sent a prophylactic message – it resolved a good-faith dispute in a complex area of law, clarifying an area that required clarity. Thus, under this prong, an award of fees is also not warranted.

4. Broad benefit

Finally, the fourth factor directs the court to analyze how the outcome benefitted the greater whole – the members of the pension plan at large. Here, there can be little doubt that the outcome offered little in terms of a large-scale impact on pension plans as a whole as both corporate defendants acknowledged that their apprentice programs were not paid for out of pension funds. Memorandum of Decision (Document 34) at p.5.

While an important legal issue – ERISA pre-emption as applied to an apprentice requirement in a Responsible Ordinance – has been clarified, its impact on plan administrators can not be calculated or verified, as the only apprentice programs that are a part of the record before this court are those funded out of corporate general assets – thereby not implicating pension funds.  And, as the First Circuit has emphasized, "ERISA was primarily intended to protect the interests of plan beneficiaries and participants…" *Gray v. New England Tel and Tel. Co.*, 792 F. 2d at 259.  For these reasons, the fourth factor also favors denial of an award of legal fees.

This case involved a challenge by a trade association of an ordinance that it deemed harmful to the interests of its members.  ERISA was a bow in the quiver; it was not the target of the archer.  Application of the five-factor test to this case – where a complex legal issue was submitted and resolved by the court – reveals that there exists no basis under the ERISA statute to award legal fees in this action.

IV.   CONCLUSION

For all of the foregoing reasons, and those raised at oral argument before this court, the city of Quincy respectfully submits that a fee award limited as set forth herein, is just and appropriate in the circumstances of this case.

By its attorney,

/s/ James S. Timmins
James S. Timmins  BBO # 547512
City Solicitor
City of Quincy
1305 Hancock Street
Quincy MA 02169
(617) 376-0700
jtimmins@quincyma.gov

CERTIFICATION OF SERVICE

I hereby certify that I have filed this document through the ECF system, which provides for electronic service on registered participants; counsel for all parties are so registered, and will be identified in the Notice of Electronic Filing.

_____
James S. Timmins