UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10458-RWZ

MERIT CONSTRUCTION ALLIANCE, *et al.*

v.

CITY OF QUINCY

MEMORANDUM OF DECISION

August 2, 2013

ZOBEL, D.J.

Plaintiffs move for an award of attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 1132(g)(1). For the reasons given below, their motion is allowed.

## I. Background

Plaintiffs sued the City of Quincy in March 2012 to challenge city regulations imposing certain prerequisites for contractors bidding on public works projects. Those prerequisites included a residency requirement, under which at least 33% of a contractor's employees working on Quincy public works projects had to be Quincy residents; a health and welfare plan requirement, under which a contractor was compelled to provide health and welfare benefits to its employees; a pension plan requirement, under which a contractor had to provide a pension plan for its employees; and an apprenticeship requirement, under which a contractor was required to maintain an apprenticeship program for each apprenticeable trade represented in its workforce. Plaintiffs argued that the residency requirement violated the Privileges and Immunities

Clause in Article IV, Section 2 of the Federal Constitution; and they argued that the other requirements were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

Plaintiffs' suit was not the first to raise such challenges. In October 2011, I struck down nearly identical requirements imposed by the City of Fall River on its public works projects. See Util. Contractors Ass'n. of New Eng. v. City of Fall River (UCANE), Civil Action No. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011). That decision clearly explained why a residency requirement like Quincy's violates the Privileges and Immunities Clause, see id. at *4-5, and why a health and welfare benefits requirement, a pension plan requirement, and an apprenticeship requirement like Quincy's are preempted by ERISA. UCANE was handed down five months before plaintiffs filed their complaint in this case, giving Quincy clear notice of the state of the law.

Quincy conceded that its health and welfare benefits requirement and its pension plan requirement were preempted by ERISA, but decided to litigate the validity of the other two provisions. After six months of discovery, Quincy also conceded that the residency requirement was unconstitutional. The parties filed cross-motions for summary judgment on the apprenticeship provision, and I ruled for plaintiffs.

Plaintiffs now seek attorneys' fees under 42 U.S.C. § 1988 for their expenses in litigating the residency requirement, and under 29 U.S.C. § 1132(g)(1) for their expenses in litigating the other requirements. They request a total of $81,007.85. Quincy concedes that the plaintiffs are entitled to some attorneys' fees under 42 U.S.C. § 1988 for the cost of litigating the residency requirement, but none under 29 U.S.C.

§ 1132(g)(1) for litigating the other requirements. It suggests the plaintiffs should be awarded only $20,725.00.

## II. Analysis

The fee-shifting provision in 42 U.S.C. § 1988 provides that in any action brought to enforce specified federal civil rights statutes, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." Gay Officers Action League v. Puerto Rico (GOAL), 247 F.3d 288, 293 (1st Cir. 2001).

Quincy has conceded that its residency requirement violates the Privileges and Immunities Clause of Article IV, Section 2. A final judgment will therefore enter on this issue in plaintiffs' favor. When that final judgment enters, plaintiffs will have prevailed on their constitutional claim. See Buckhannon Bd. and Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 600, 604 (2001) (holding a party can prevail either by obtaining a judgment on the merits or a court-ordered consent decree).

Quincy notes that "obtaining equitable relief does not automatically confer prevailing party status." GOAL, 247 F.3d at 293. Here, however, plaintiffs have achieved far more than merely "the moral satisfaction that results from any favorable statement of the law." Id. at 294 (quoting Farrar v. Hobby, 506 U.S. 103, 112 (1992)). Instead, they have prevented Quincy from maintaining an unconstitutional city ordinance—one that Quincy had recently reaffirmed its intent to enforce. Cf. id. at 294-95 (finding plaintiffs prevailed by obtaining declaratory and injunctive relief against an

unconstitutional statute that the defendant "never publicly repudiated" and "vigorously defended"). Plaintiffs' success is sufficiently meaningful to warrant prevailing party status. They will therefore be entitled to fees under § 1988 for their attorneys' efforts in litigating the residency requirement, since no special circumstances render such an award unjust in this case. See Newman v. Piggie Park Enters., 390 U.S. 400, 402-03 (1968).

Plaintiffs assert they are also entitled to fees for the time their attorneys spent litigating against Quincy's other requirements, which were not unconstitutional but which were preempted by ERISA. Plaintiffs seek those fees under 42 U.S.C. § 1988, arguing their ERISA preemption claims were related by a common core of facts and similar legal theories to their constitutional claim. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). They also seek those fees under 29 U.S.C. § 1132(g)(1), which states: "In any [ERISA] action . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Because I find the latter statute justifies awarding plaintiffs attorneys' fees for time spent litigating their ERISA preemption claims, I need not decide whether 42 U.S.C. § 1988 also applies.

In deciding whether an award of fees is appropriate under 29 U.S.C. § 1132(g)(1), I look to the following five factors: "(1) the degree of bad faith or culpability of the losing party; (2) the ability of such party to personally satisfy an award of fees; (3) whether such award would deter other persons acting under similar circumstances; (4) the amount of benefit to the action as conferred on the members of the pension

4

plan; and (5) the relative merits of the parties' positions." Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 257-58 (1st Cir. 1986). These five factors are only guidelines; not every factor must be considered in every case, and no one factor is dispositive. Id. at 258.

The first factor weighs somewhat against an award of fees. I credit Quincy's position that it litigated this case in good faith, rather than for any improper or oppressive purpose. Neither party has presented evidence or argument on the second factor, and so I find it neutral. The third factor, however, weighs heavily in favor of awarding fees. As the nearly identical ordinances in this case and UCANE show, cities have a strong political incentive to regulate public works contractors in ways that favor local residents—even if they may violate ERISA by doing so. Awarding attorneys' fees in this case should balance that strong political incentive, and deter other cities from enacting or defending similar unlawful ordinances.

The fourth factor is inapplicable here, because this suit was not brought to confer a benefit on the members of any specific ERISA pension plan. See Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 557 (6th Cir. 1987). The fifth factor, however, weighs in favor of awarding fees. Although Quincy's arguments in favor of its apprenticeship requirement were not frivolous, I had already rejected them just a few months before this suit began. Given the recent decision in UCANE, it was clear at the time the lawsuit began that Quincy's case lacked merit.

Considering all five factors, particularly the third and fifth, I find that plaintiffs should be awarded fees under 29 U.S.C. § 1132(g)(1) for the time their attorneys spent

litigating their ERISA preemption claims. Furthermore, as described above, they will be entitled to fees under 42 U.S.C. § 1988 for the time their attorneys spent litigating against the residency requirement.

I have reviewed the billing information submitted by plaintiffs and have determined that the hours their attorneys expended and the rates they charged were reasonable. I have further determined that no special considerations require me to adjust the fee upward or downward. See Hensley, 461 U.S. at 434.

## III. Conclusion

Plaintiffs' motion for attorneys' fees (Docket # 35) is ALLOWED. Plaintiffs will be awarded fees in the amount of $81,007.85 when judgment enters.

Quincy's motion to strike the affidavit of Kevin M. Jones (Docket # 38) is DENIED.

    August 2, 2013                           /s/Rya W. Zobel
       DATE                                RYA W. ZOBEL
                                           UNITED STATES DISTRICT JUDGE