# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MERIT CONSTRUCTION ALLIANCE;<br>GRASSESCHI PLUMBING & HEATING,<br>INC.; D'AGOSTINO ASSOCIATES, INC.;<br>and DAVID ROSS,<br>     Plaintiffs,<br><br>v.<br><br>CITY OF QUINCY,<br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 1:12-cv-10458 |

## OPPOSITION TO QUINCY'S MOTION TO RECONSIDER AWARD OF ATTORNEYS' FEES

Plaintiffs Merit Construction Alliance ("MCA"), Grasseschi Plumbing & Heating, Inc. ("Grasseschi"), D'Agostino Associates, Inc. ("D'Agostino"), and David Ross (collectively "Plaintiffs"), hereby oppose the motion of Defendant City of Quincy ("Quincy") for reconsideration of this Court's award of attorneys' fees. (Doc. #44.)

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006)(quoting 11 Charles Alan Wright, et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)). "Motions for reconsideration are not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'" United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)(quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006)). Nor should such motions be used "to rehash old arguments already considered and rejected by the trial court." National Metal Finishing Co. v. Barclays American/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990). "Instead, motions for reconsideration are appropriate only in a limited number of circumstances:

if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." Allen, 573 F.3d at 53. Even these limited grounds are each narrowly cabined—for instance, "[a] court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence 'in the exercise of due diligence[] could have been presented earlier.'" Id. (quoting Emmanuel v. International Brotherhood of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005)).

In its motion, Quincy neglects to mention the applicable standard for reconsideration because it cannot meet it. In its original opposition to Plaintiffs' motion for fees, Quincy limited its arguments regarding ERISA's fee-shifting provision to how the Court should apply the five discretionary factors articulated in Gray v. New England Telephone & Telegraph Co., 792 F.2d 251, 257–58 (1st Cir. 1986). See Quincy's Opp. to Mot. for Fees at 8–12 (Doc. #37). Quincy's original opposition is completely silent with respect to the proper-plaintiff and statutory-construction arguments that it now seeks to raise even though both legal issues were explicitly addressed in Plaintiffs' motion papers. See Pls.' Memo. in Supp. of Mot. for Fees at 8 (Doc. #36). By all appearances, Quincy conceded these points, presumably as a tactical choice allowing it to focus its energies on other arguments that it believed to have a greater chance of success.

Having lost on the arguments it chose to make, Quincy cannot now use a motion to reconsider to get a second bite at the apple and try out a different approach in re-litigating issues it already had the opportunity to brief. See, e.g., Villanueva v. United States, 662 F.3d 124, 128 (1st Cir. 2011); Allen, 573 F.3d at 53. "The presentation of a previously unpled and undeveloped argument in a motion for reconsideration neither cures the original omission nor

preserves the argument as a matter of right for appellate review." Iverson v. City of Boston, 452 F.3d 94, 103 (1st Cir. 2006).

Even were this Court to consider the substance of Quincy's belated arguments, it must reject them because Quincy is wrong on the law. As set forth in the Plaintiffs' original motion papers, Mr. Ross is a "participant" in an ERISA plan within the meaning of that defined term. *See* Pls.' Memo. in Supp. of Mot. for Fees at 8 (Doc. #36); *see also, e.g.*, 29 U.S.C. § 1002(7)(defining "participant" for ERISA purposes). Quincy does not dispute this, but argues instead that he is a participant in the wrong plan. According to Quincy, in order to qualify for attorneys' fees, Mr. Ross must have been a participant in the specific plan at issue in the lawsuit. But by Quincy's logic, the plan at issue here was the apprenticeship program that Quincy unlawfully tried to impose on public bidders such as Mr. Ross's employer. Quincy makes its assertion without citing any language in the statute, or any authority construing the statute, which narrows the term "participant" in this odd way. Particularly given the remedial purposes of ERISA's fee-shifting provision, it cannot be that Mr. Ross has to actually be enrolled in a plan that Quincy tried to illegally compel into existence before having standing to challenge the city's unlawful ordinance and recover fees upon prevailing in that challenge. Had his employer acquiesced and complied with Quincy's unlawful mandate, there is no question that Mr. Ross would have been enrolled in the apprenticeship plan at issue—or to speak more precisely, the apprenticeship requirements Quincy sought to impose would have become part of the ERISA-governed benefits offered by his employer. *I.e.*, the apprenticeship requirements would have become part of the benefit plan in which Mr. Ross was already participating.

Quincy also contends that the Plaintiffs' challenge was not brought "under this subchapter," as that phrase is used in ERISA's fee-shifting provision. *See* 29 U.S.C.

3

§ 1132(g)(1). Here, again, Quincy's argument invents additional—and counterintuitive— limitations that are not supported by the text of the statute or by any court's construction of it. The rule of federal preemption that Plaintiffs brought suit to enforce is contained in § 1144 of Title 29 of the United States Code. That section falls within Subchapter I of Chapter 18 of Title 29, the very same "subchapter" as the fee-shifting provision. The plain meaning of the statute could not be more clear. *See, e.g.*, <u>Denny's, Inc. v. Cake</u>, 364 F.3d 521, 525 (4th Cir. 2004)(observing that the preemption provision and § 1132 are "clearly" and "[i]ndisputably" within the same "subchapter"). Neither the fee-shifting provision nor any other part of the ERISA statute makes any distinction that excludes an award of fees in cases such as this on the ground that only declaratory relief was sought.

Indeed, none of the cases cited by Quincy support its argument. Quincy principally relies on <u>Associated General Contractors, San Diego Chapter, Inc. v. Smith</u>, 74 F.3d 926 (9th Cir. 1996), and <u>Dillingham Constr., N.A. v. County of Sonoma</u>, 57 F.3d 712 (9th Cir. 1995). Yet neither case concerns an award of fees under ERISA's fee-shifting provision. Rather, the plaintiffs in both sought fees only on the basis of 42 U.S.C. § 1988. In <u>Smith</u>, the Ninth Circuit merely affirmed the district court's discretionary refusal to make a fee award under that statute. *See <u>id.</u>*, 74 F.3d at 931. In <u>Dillingham</u>, the Ninth Circuit did go further and say that ERISA preemption claims do not vindicate federal rights as required to bring fee requests within the ambit of § 1988, *see <u>id.</u>*, 57 F.3d at 722, however Quincy fails to mention that the Ninth Circuit's decision in that case was subsequently reversed by the Supreme Court. *See* <u>California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A.</u>, 519 U.S. 316 (1997); *see also, e.g.*, <u>Oregon Columbia Brick Masons Joint Apprenticeship Training Comm.</u>, 448 F.3d 1082, 1086

(9th Cir. 2006)(recognizing the abrogation of <u>Smith</u> in light of the Supreme Court's reversal in <u>Dillingham</u>).

Quincy next attempts to draw an analogy to cases where plan administrators sought to exploit ERISA's nation-wide service of process provisions in order to commence declaratory actions in distant forums to thwart participants' or regulators' claims pending against them elsewhere. *See* <u>Denny's</u>, 364 F.3d at 521 (suit in South Carolina federal court against California regulators); <u>NGS American, Inc. v. Jefferson</u>, 218 F.3d 519 (6th Cir. 2000)(suit in Michigan federal court against residents of Florida); <u>Gulf Life Ins. Co. v. Arnold</u>, 809 F.2d 1520 (11th Cir. 1987)(suit in Florida federal court against a Tennessee resident). As the Sixth Circuit observed in <u>Jefferson</u>, the federal courts "frown upon [such] actions brought for procedural fencing purposes." *Id.*, 218 F.3d at 522. Although these cases reached various outcomes, in each the grounds for the court's decision turned on the meaning of statutory words and phrases ***not found*** within § 1132(g)(1). As such, the cases do not in any way limit, let alone prohibit, an award of fees under that subsection. Moreover, the disputes at issue in <u>Denny's</u>, <u>Jefferson</u>, and <u>Arnold</u> raise fundamentally different policy considerations—including federalism concerns and the limits of federal court jurisdiction—than those that motivate <u>Gray</u>'s five-factor test. For this reason too, these cases are most inapposite.

Both <u>McDorman v. Sierra Auto Center</u>, 770 F. Supp. 551 (D. Nev. 1991), and <u>Gordon v. Prudential Fin., Inc.</u>, 2008 WL 4531977 (S.D. Cal. Oct. 8, 2008), are distinguishable because they involve fee applications from prevailing defendants who merely asserted ERISA-related affirmative defenses in response to claims that otherwise arose exclusively under state law. In both cases, the courts recognized that the outcome would be different if the plaintiffs had, at any point, based any of their claims on the federal ERISA statute. *See* <u>McDorman</u>, 770 F. Supp. at

552–53 (distinguishing <u>Vance v. Aetna Life Ins.</u>, 714 F. Supp. 203 (E.D. Va. 1989)); <u>Gordon</u>, 2008 WL 4531977 at *2 (same).

Finally, even if this Court were to agree with Quincy's untimely and misguided arguments, the Court's award of fees here is nevertheless sustainable entirely under 42 U.S.C. § 1988. *See* <u>Pls.' Memo. in Supp. of Mot. for Fees</u> at 6 (Doc. #36); *see also*, *e.g.*, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983). While the Court did not reach this question, given the manner in which it resolved Plaintiffs' motion, § 1988 remains a valid alternative basis for the award of all of the Plaintiffs' fees in this matter. Plaintiffs thus incorporate herein the arguments previously made in their original motion papers.

## Conclusion

Quincy cannot meet the standard required for the extraordinary relief it seeks. Its untimely arguments are substantively wrong, and even if they were correct, valid alternative grounds support this Court's award of fees. Accordingly, Quincy's motion must be denied.

Respectfully, Submitted,

PLAINTIFFS MERIT CONSTRUCTION ALLIANCE; GRASSESCHI PLUMBING & HEATING, INC.; D'AGOSTINO ASSOCIATES, INC.; and DAVID ROSS,

By Their Attorneys,

/s/ Christopher C. Whitney
Christopher C. Whitney (BBO #547104)
(cwhitney@lbmwlaw.com)
Scott K. Pomeroy (BBO #665110)
(spomeroy@lbmwlaw.com)
LITTLE BULMAN MEDEIROS & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903
(401) 272-8080
(401) 272-8195 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2013, I caused a true copy of the within Opposition to Quincy's Motion to Reconsider Award of Attorneys' Fees to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

James S. Timmons, Esq.
(jtimmins@quincyma.gov)
(jtimmins@cronintimmins.com)
City Solicitor
CITY OF QUINCY
1305 Hancock Street
Quincy, MA 02169

/s/ Christopher C. Whitney